UNITED STATES, Appellee

v.

DONALD D. MANTOOTH, Sergeant, U. S. Army, Appellant

6 USCMA 251, 19 CMR 377

No. 6489

Decided August 12, 1955

*Major Edwin Doran* argued the cause for Appellant, Accused. With him on the brief was *First Lieutenant Joseph B. Axelman.*

*First Lieutenant A. Kenneth Pye* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton.*

Opinion of the Court

PAUL W. BROSMAN, Judge:

Mantooth, the appellant before us, was charged with carnal knowledge of the person of one Sieglinde B., in violation of the Uniform Code of Military Justice, Article 120, 50 USC § 714. The

general court-martial which tried him returned findings of guilty and sentenced him to receive a bad-conduct discharge, as well as to total forfeitures and confinement at hard labor for two years. After approval by the convening authority and affirmance by a board of review, we granted the accused's petition to enable us to consider whether the law officer erred in refusing to grant the defense's request for an instruction on fresh complaint.

## II

On June 7, 1954, a detachment of ten American soldiers arrived at a hill near Weissenburg, Germany, where they had been directed to construct a radio relay station. While the soldiers were employed in this task, a number of German adolescents of both sexes were frequently in the vicinity, among them the thirteen-year-old Sieglinde B. According to her own account, on the very day of the detachment's arrival, she engaged in sexual intercourse with one of the Americans—although not with the accused. She did not report this event to her mother, and the next day she returned to the site of the radio operations.

Sieglinde testified that on the evening of June 8—in company with a German boy, one Lutz Phieler—she entered a trailer occupied by the accused and played cards there. Soon Mantooth requested that young Phieler perform a chore requiring his presence elsewhere, and the latter departed. Once Sieglinde had closed the trailer door at the accused's request, he suggested that she remove certain of her undergarments. When she declined, he began to fondle her, although she sought to thrust him away. While she considered screaming—she said—she restrained herself lest Mantooth retaliate with force. Ultimately she and the accused participated in a completed act of intercourse.

A qualified physician testified that, in examing Sieglinde on June 14, he discovered signs indicating that during the preceding six to eight days she had probably engaged in sexual relations for the first time. Lutz Phieler corroborated her story of the card game in the trailer, followed by his departure at the accused's suggestion—and an investigator testified that Sergeant Mantooth had admitted that he played cards with Sieglinde there.

When she left the appellant on the night of June 8, the German girl made no sort of complaint or report of the accused's alleged intercourse with her. Sieglinde did not reside in the Weissenburg neighborhood, but had been visiting there, and on June 9 she and her mother returned to their home in Nurnberg. However, two days later she appears to have left her home—alone and without her family's knowledge or permission—and gone to Munich. German police officials discovered her there on that day or the next, and she was returned to her parents' control. Thereafter she mentioned her conduct with the two soldiers in conversation with a girl friend in Nurnberg, who promptly relayed the information to the child's mother. Some time later Army officials identified the detachment which had been stationed on the Weissenburg hill at relevant times, and—from photographs of members of the group—Sieglinde selected the accused as representing one of the men with whom she had engaged in sexual relations.

At the trial the accused did not seek to rebut this evidence by taking the stand. However, his counsel brought out that at the outset Sieglinde had fixed on June 9 as the date of the alleged offense; whereas there can be no doubt—on the basis of both Government and defense evidence—that Mantooth could not possibly have known Sieglinde carnally on that day. Through a Sergeant Humber, who had been present at Weissenburg with the accused, an attempt was made to construct an alibi growing out of Mantooth's other activities on June 8. Unfortunately for the accused, though, this alibi was weak and implausible—and was almost totally destroyed by the testimony of two other defense witnesses.

At the time the law officer prepared to instruct the court, the accused's civilian counsel submitted the following requested instructions *in haec verba:*

**253**

"1. Instruction on Alibi
 Page 116, Law Officer Pamphlet;
2. Instruction on Fresh Complaint, Page 256, par 142(c) MCM, US, 1951
3. Instruction on Credibility of witness
 Page 289, para. 153a, MCM, US, 1951, 1st & 2d Para."

The trial counsel then announced that, although he had no objection to the first and third of the proposed instructions, he did "object to instruction number two on fresh complaint, that it is not pertinent to this case." When asked for an expression of the defense position in the matter, the accused's lawyer referred again only to paragraph 142c of the current Manual. The law officer observed that he could not see that the cited paragraph was in any way relevant, since there had been no evidence of fresh complaint—but this was countered by the defense lawyer's suggestion that his point was that *no* complaint had been made. After further discussion, the law officer commented that, unless other authorities were presented, he would furnish no instruction on fresh complaint. He did, however, grant the first and third requests, and thus instructed on alibi and witness credibility.

### III

The Manual for Courts-Martial, United States, 1951, comments that, "In general, a person gains no ▮ corroboration merely because he repeats a statement a number of times. Hence, a witness ordinarily may not be corroborated by showing that he made statements consistent with his testimony." Paragraph 153a. In keeping with the point of view of this provision, prior extrajudicial statements made by a witness are as a general thing inadmissible in evidence in military courts. However, the Manual also provides that, "In prosecutions for sexual offenses, such as rape, carnal knowledge, sodomy, attempts to commit such offenses, assaults with intent to commit rape or sodomy, and indecent assaults, evidence that the alleged victim of such an offense made a complaint thereof within a short time thereafter is admissible." Paragraph 142c, supra. A "fresh complaint" is thus an important item of evidence in many cases, and may be highly material to a determination of the legal sufficiency of the Government's evidence. See Manual, supra, paragraph 153a; United States v. Henderson, 4 USCMA 268, 15 CMR 268.

Civilian jurisprudence, like that of the military establishment, recognizes the doctrine of fresh complaint—at least in rape cases. Dean Wigmore observes that in this area three different rationales, all leading to a determination of admissibility, may be tendered —each with its individual procedural consequences. Wigmore, Evidence, 3d ed, § 1134, et seq. But, regardless of the rationale employed, it seems true that "Evidence of the complaint is admitted on the theory that the natural instinct of a female thus outraged and injured [by the rape] prompts her to disclose the occurrence at the earliest opportunity to the relative or friend who naturally has the deepest interest in her welfare, and it is deemed relevant on the ground that it corroborates her statement that she was assaulted." Wharton, Crimal Evidence, 11th ed, § 437; see also State v. Birchard, 35 Ore 484, 59 Pac 468; Loose v. State, 120 Wis 115, 97 NW 526.

Just as a promptly made report affords valuable corroboration of the testimony of a prosecutrix in a rape case, so the absence of such a complaint may aid in defense efforts to impeach her testimony. Wigmore, supra, § 1135. Consequently, we have held that it was error and prejudice for a law officer to refuse the defense an opportunity to show that a prosecutrix in such a case had entered no fresh complaint. United States v. Plummer, 1 USCMA 373, 3 CMR 107. And many civilian precedents support the proposition that—in a rape case and on request—the judge must inform the jury that the want of a fresh complaint is a circumstance properly to be considered in appraising the prosecutrix's credibility. See, e.g., State v. Thomas, 351 Mo 804, 174 SW 2d 337; Commonwealth v. Berklowitz, 133 Pa Super 190, 2 A2d 516.

254

Yet there exist sorts of sexual offenses following which any variety of fresh complaint would be extraordinary—at least unexpected. Voluntary sodomy or adultery would, for example, scarcely evoke a complaint from one of the willing participants; nor would incest under some circumstances. Concerning the victim of a statutory rape—or carnal knowledge, the crime with which we are concerned—one court has commented incisively that "the natural bent of her mind thereafter would be to enable her immoral associate to escape the consequences of his criminal act—to shield rather than to aid in punishing him." Loose v. State, supra. Moreover, insofar as evidence of fresh complaint is admissible because it tends to establish a want of consent, it would seem to be superfluous in cases where an absence of consent constitutes no element of the crime. Accordingly, doubt has been expressed in such cases that a showing of fresh complaint is admissible. For instance, Wharton says that:

". . . The rule [allowing proof of fresh complaint], however, does not extend to the crime of taking indecent liberties with a child, or to other offenses. The reason for receiving such evidence is not present in cases of assault, other than rape cases." [Wharton, supra, § 437.]

Wigmore, too, contends that,

". . . the *fact of complaint* should not be admissible on a charge of *seduction,* nor ordinarily on a charge of *rape under age of consent,* except for children; but should be admissible for *other offences* usually involving force." [Wigmore, supra, § 1135.]

And, viewing the other side of the coin, he states:

"The *failure to make complaint* should not be admissible on a charge of *rape under age of consent,* unless where the complainant is a child of tender years; nor, (unless in the same exceptional case) on a charge of *sodomy;* nor, perhaps, on a charge of *taking indecent liberties.*" [Ibid.]

It is clear, though, that the framers of the Manual did not accept these differentiations, for they authorized proof of fresh complaint "in prosecutions for sexual offenses," and expressly included within the term crimes of the nature of sodomy and carnal knowledge in which lack of consent is not an element. We are sure, too, that, in those instances in which evidence of fresh complaint is accepted a showing of the absence of such a report should be regarded as equally admissible. See State v. Richardson, 349 Mo 1103, 163 SW2d 956.

## IV

While there seems to be a certain amount of discord among the civilian precedents having to do ▌ with the *competency* of evidence to the effect that no fresh complaint was made by the victim in a carnal knowledge or statutory rape case, we are impressed by the array of authorities to the effect that no *instruction* need be furnished the jury concerning the effect of a lack of complaint. See, e.g., State v. Paddock, 86 Mont 569, 284 Pac 549; Loose v. State, supra; People v. Martinez, 59 Cal App 121, 210 Pac 61; Levy v. Territory, 13 Ariz 425, 115 Pac 415; State v. Birchard, supra.

The Arizona court stated, for example, in the Levy case:

"Appellant requested the court to instruct the jury that the fact that the girl made no complaint is a circumstance to be taken into consideration in determining the weight to be given her testimony, which instruction the court refused. The fact that the victim of an outrage makes complaint is admitted in evidence to corroborate her testimony that she did not consent, and if no complaint is made that fact may be considered in determining her credibility upon that point. Of course, the reason for the rule wholly fails in a case like the one before us, where no question of consent is involved. The instruction was properly refused. State v. Oswalt, 72 Kan. 84, 82 Pac. 586; Loose v. State, 120 Wis. 115, 97 N. W. 526, 33 Cyc. 1469."

And in upholding the denial of a requested instruction that a failure to complain promptly is a circumstance to be considered by the jury as tending to show the improbability of the prosecutrix's testimony that she had been a victim of statutory rape, a California appellate court remarked:

". . . The admission of evidence tending to show statements concerning the outrage made at the first opportunity, where the victim was of consent age has always been permitted as tending to show that she was an unwilling victim, and has been regarded as original evidence; and the fact that no outcry was made when other parties were known to be near, or no complaint made, has been received in evidence and regarded as a circumstance proper to be shown as affecting the question of willingness or unwillingness upon the part of the victim. In cases, however, where the willingness of the prosecuting witness is immaterial by reason of inability to consent, the matters involved in outcry or complaint have no significance." [People v. Jacobs, 16 Cal App 478, 117 Pac 615. Accord: People v. Reynolds, 48 Cal App 688, 192 Pac 343.]

In State v. Oswalt, 72 Kan 84, 82 Pac 586, the court commented that, assuming the competency of evidence bearing on the presence or absence of fresh complaint, "the matter is not there such an important one as to make it imperative that the court shall single it out and instruct specifically upon it." Therefore, the trial judge's refusal of a requested instruction regarding the absence of a fresh complaint was affirmed.

A Missouri case, State v. Richardson, supra, is especially interesting in the present connection. The defendant's fourteen-year-old daughter had testified that he had performed acts of sexual intercourse with her over a period of years, and had threatened her with physical violence if she disclosed his shocking conduct. The court first observed that:

". . . while nonconsent is not legally essential in prosecutions for

rape of a female under the statutory age of consent (as here) and therefore evidence of such complaints is held immaterial in some jurisdictions; yet in this state the testimony is admitted where there is further evidence that the ravishment was in fact accomplished by force, to corroborate the prosecutrix on that issue as in common law cases. Indeed, there are two Missouri decisions in which the testimony was held admissible without reference to the presence or absence of force."

As to the denial of an instruction requested by the defense, and related to the failure of the daughter to make prompt complaint, it was noted that:

". . . In prosecutions for forcible rape of a woman over the statutory age of consent, the giving of such an instruction in correct form is proper . . . and the refusal or modification thereof has been held prejudicial error. . . . On the other hand, it is ruled in numerous cases that the defendant is not entitled to an instruction of that character in prosecutions for statutory rape of a female under the age of consent, *even though there be evidence that the rape actually was accomplished by force,* and the facts of prompt complaint or delay in complaint are proven and open to comment by counsel in argument.

. . . . .

". . . What the foregoing line of decisions and the earlier ones on rape of a female over the age of consent really hold is, that the cautionary instruction may or should be given in a common law rape case (brought under the second part of Sec. 4393, supra), because there force and nonconsent are essential, ultimate elements of the crime; whereas in prosecutions for rape of a female under the statutory age of consent, proof of complaint vel non is merely corroborative or discrediting evidence on force and nonconsent as collateral issues, and therefore the instruction should not be given. . . . The statute has therefore fixed an arbitrary age, and as a result the evidence in cases below that age

goes in for whatever it is worth, but neither side is entitled to an instruction on it." [Emphasis supplied.]

Since in a consensual sex crime there is little basis for anticipating a fresh complaint, we are of the opinion that it would be highly misleading to charge the trier of fact that the absence of such a report should be taken into account in weighing a witness' credibility. Certainly in a situation in which no claim is made that the accused used force or violence, we must accede to the civilian precedents which hold no such instruction necessary, even following a defense request.

Arguably a different rule should be applied in a carnal knowledge case, if the prosecutrix's testimony ■ indicates clearly that force was in fact employed by the defendant. After all, the evidence of lack of complaint may be said to be competent there to show that the testimony is false. However, civilian precedents recognize that, although such evidence be held *admissible*, this does not necessarily demand the giving of an *instruction* relating to its effect. See State v. Oswalt, supra; State v. Richardson, supra. The Richardson case seems especially on point by reason of its statement that, in an incest-carnal knowledge situation, no instruction is demanded concerning an absence of complaint, despite proof that force was used on the prosecutrix.

For taking the same position, we shall set down two reasons. The first is that the notion of fresh complaint has its peculiar bearing on lack of consent—and, where consent is not in issue, the need to focus attention on the absence of a prompt report is distinctly diminished. Conceivably by instructing the court that its members must give heed to the presence—or absence—of a fresh complaint, the law officer might lead them erroneously to believe that an absence of the victim's consent is a requirement of the offense. Secondly, the reaction of minors to the malefaction under consideration—even when perpetrated by force— is exceedingly difficult to forecast. Because of their very immaturity they may be reluctant to reveal the circumstances of an attack on them, or they may feel less resentment against the use of force than would be thought by an adult. Consequently, it is doubtless preferable that the import of the absence of complaint be left—as in the instant case —to arguments of counsel solely, and not isolated by the law officer for the court's consideration. Of course, this is not to imply that a law officer would be guilty of an abuse of discretion in referring to a possible failure to complain promptly—if he thought that to do so would enlighten court members in a particular case.

V

Although we were to accept the position that testimony by a carnal knowledge prosecutrix that force was used against her would in a proper case create necessity for a fresh complaint instruction, we incline to the view that this circumstance would not demand a finding of error in the case at bar. While Sieglinde indicated that fear played some part in her cooperation with the sergeant here, there was no shred of testimony that he made use of violence in the usual sense of that term, or said or implied that he would do so if needs be. Indeed, in arguing for a moderate sentence, his lawyer relied heavily on the very circumstance that evidence of force was entirely wanting. All in all, the incident, according to the prosecutrix's own testimony, may not have been measured by her as the sort of outrage which a teen-age child would hasten to report to parents or friends.

Another point merits comment in our discussion of the requested instruction. By silence we do not wish to lend approbation to instructional requests as bare—even ambiguous—as the second submitted in the instant case. We assume that civilian defense counsel wished the law officer to read to the members of the court the cited passage in the Manual for Courts-Martial. Had this desire been complied with, it will be apparent that—without more—the court could only have reaped confusion. While it is true that the request was subsequently clarified during an out-

of-court conference, we trust that in the future lawyers appearing before military courts will avoid as much as possible the placement of undue burdens on the law officer such as are certain to result from the submission of unclear, skeletal instructional prayers.

In conclusion, it is difficult for us to see how the denial of the instruction—conceding error *arguendo*—could have prejudiced the accused materially. Cf. United States v. Allums, 5 USCMA 435, 18 CMR 59. The testimony of Sieglinde was clear and credible—although reluctantly given—and was corroborated by medical evidence, the testimony of Lutz Phieler, and the accused's own admissions. In opposition to this there can be found no more than an effort on the part of a service friend to establish for Mantooth an alibi which was feeble in its own right, and wholly demolished by other defense witnesses and by a pretrial admission on the part of the accused himself. Needless to say, the court-martial convicted the accused in short order, and we are convinced that, on the evidence before it, an identical result would have followed in the face of an instruction on fresh complaint.

VI

In light of what has been said, we have no choice but to affirm the findings and sentence—and we do so.

Chief Judge QUINN and Judge LATIMER concur.