UNITED STATES, Appellee

v

JAMES R. ANNAL, Captain, U. S. Army, Appellant

13 USCMA 427, 32 CMR 427

428

No. 15,984

January 4, 1963

C. *Robert Bard, Esquire,* argued the cause for Appellant, Accused. With him on the brief was *Captain David M. Gill.*

*Captain Harvey L. Zuckman* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. Mc-Conaughy, Major Francis M. Cooper,* and *Captain Stanley M. Wanger.*

## Opinion of the Court

QUINN, Chief Judge:

This thirty-four-year-old officer, with almost a decade of honorable commissioned service, was sentenced to dismissal by a general court-martial, which found him guilty of committing an indecent and lascivious act, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The record of trial is before us for review of three separate questions of law.

First, the accused contends the specification does not allege an offense in that the acts charged are acts █ of "absolute propriety and decency." In material part, the specification alleges that on September 2, 1961, the accused wrongfully committed an "indecent, lewd, and lascivious act with Lee Kap Yong, by forcefully grabbing Lee and trying to embrace" him. Accused maintains the word "embrace" indicates merely the clasping of one person by another with affection, but carries no "connotation of sexual desire." "French generals,"

he says, "embrace heroes"; and parents embrace their children. Unquestionably, a fertile imagination might produce a multitude of examples of the use of the word; but in common usage, and in context, it is also used to describe a "close encircling with the arms and pressure to the bosom, . . . [especially] *in the intimacies of love."* (Emphasis supplied.) Webster's New International Dictionary, 2d ed, page 836. What meaning was intended by the pleader is apparent from the further allegation that the act charged was "indecent, lewd, and lascivious"; in other words, what was done by the accused was done in a manner repugnant to common propriety, and in a way which was designed to excite lust or sexual impurity. The additional allegation "defines the character of the accused's act," and excludes the possibility that the act was innocent. United States v Holland, 12 USCMA 444, 31 CMR 30. We conclude, therefore, that the specification is legally sufficient.

**429**

Turning to the evidence, the accused contends it is insufficient to support the findings of guilty. He admits there is direct testimony by Lee of the commission of the acts in the telephone switchboard building at the Chemical Depot, Camp Mercer, Korea, but Lee's testimony, he says, is "patently incredible." A reading of the record of trial does not indicate such inconsistencies in, or contradictions of, Lee's testimony as to justify disregarding it as a matter of law. See United States v Zeigler, 12 USCMA 604, 31 CMR 190. True, the court-martial acquitted the accused of another specification relating to an offense committed on August 28, 1961, as to which Lee was the principal witness against him, but the triers of fact "may conclude a witness is not telling the truth as to one point, is mistaken as to another, but is truthful and accurate as to a third." Elwert v United States, 231 F2d 928, 934 (CA 9th Cir) (1956). The accused's acquittal of the other offense does not invalidate the finding of guilty on the specification before us, since the two offenses are separate. See United States v Jackson, 7 USCMA 67, 21 CMR 193.

Lastly, the accused charges the law officer erred to his prejudice by admitting in evidence statements by Lee to Major Ignatius J. Turon, the accused's commanding officer, and Kim Ki Won, who, like Lee, was a telephone switchboard operator at the Depot. Major Turon testified that at about 6:35 a.m., on September 2, 1961, "Mr. Lee related the story that he was accosted by Captain Annal in the early morning hours, approximately around 2 or 2:30 in the morning, that he was assaulted." The statement was made through "Mr. Kim . . . interpreting for Mr. Lee because he said he couldn't express himself too well in English." There was no defense objection to this testimony; nor was there objection to Lee's testimony that he made a "report to the depot commanding officer about 6 o'clock with Mr. Kim . . . about what happening, how happening; I report to the Major." Finally, there was no defense objection to Lee's testimony identifying an officer

called into the courtroom as the man to whom he had "told" the incident. (This officer was Major Turon.) However, defense counsel did object to testimony by Lee that he told Kim of this incident, and also of the August offense (which was the subject of the specification of the charge of which the accused was acquitted). He further objected to testimony by Kim that Lee had called him to the Depot telephone room to tell him of the accused's assault. No direct ruling was made on this last objection, but the law officer allowed trial counsel to continue the examination of Kim to show "complaint of the incident was made to him."

On this appeal, the accused maintains that neither Major Turon's testimony nor Kim's testimony is admissible. The latter is inadmissible, the accused argues, because Lee's report was not intended to be a complaint, but an effort to engage him as interpreter "preparatory to complaining." Major Turon's testimony is inadmissible, contends the accused, because a statement through an interpreter cannot be proved "by evidence of the interpreter's translation." Countering these objections, the Government, in part, insists that the failure to object at the trial constitutes a waiver of error, if any, in the admission of Lee's, and Major Turon's testimony of Lee's complaint. See United States v Doctor, 7 USCMA 126, 21 CMR 252. Whether, in view of the partial objection of defense counsel, application of the waiver rule is appropriate need not detain us. In our opinion, the law officer's rulings were correct.

Ordinarily, testimony by a witness that previous to trial he made a statement to another person embodying the substance of his testimony in court is inadmissible in evidence. Manual for Courts-Martial, United States, 1951, paragraph 153a; United States v Mantooth, 6 USCMA 251, 254, 19 CMR 377; Townsend v United States, 106 F2d 273, 275 (CA 3d Cir) (1939). The general rule of exclusion is subject to exceptions. One such exception is that timely or "fresh" complaint by the victim of a sexual assault is admissible to cor-

roborate the witness' trial testimony.[1] The Manual for Courts-Martial sets out this exception as follows:

*c.* **Fresh complaint.**—In prosecutions for sexual offenses, . . . evidence that the alleged victim . . . made complaint thereof within a short time thereafter is admissible. This evidence is to be restricted to proof that the complaint . . . was made. . . ." [Manual for Courts-Martial, United States, 1951, paragraph 142*c.*]

Complaint need not be made immediately after commission of the offense and during a time when the complainant is still in a condition of excitement, shock or surprise. It is sufficient if made "within a short time" after the event. What is "a short time"? Is it an hour after the offense; or ten hours; or a day? If, for example, a victim of rape is rendered unconscious, and does not regain consciousness until seventy-two hours after the event, can it be said there was, as a matter of law, a failure to make fresh complaint; and that such failure may be considered to discredit the testimony of the victim? See United States v Washington, 2 USCMA 177, 7 CMR 53. Manifestly, the phrase imports some degree of flexibility. In its excellent brief, the Government admits that American judicial authorities are divided on the degree of flexibility allowed in a situation of this kind. See 44 Am Jur, Rape, § 86. It contends, however, that even under the most circumscribed view, the evidence of complaint in this case is admissible. The complaint was made about four hours from the time the accused accosted Lee in the telephone room and within two and one-half hours of accused's departure.[2] Lee testified that, although he was at the switchboard, he did not attempt to call anyone as soon as the accused left to report the incident because he "couldn't converse with any American authority . . . over the telephone, . . . [but he] intended to report . . . in oral conversation." He further testified he made no effort to leave the telephone room because it was his "duty hour," and he was "supposed not to leaving that place." In light of Lee's explanation, and the fact that the offense allegedly occurred between 2:00 and 4:00 a.m., it was reasonable for Lee to wait until Kim arrived. See United States v Washington, supra; United States v Gordon, 24 CMR 443, 446; De Salvo v People, 98 Colo 368, 56 Pac 2d 28. The law officer, therefore, properly admitted Lee's testimony that he complained to Kim and to Major Turon about the accused's acts.

Kim's testimony was also admissible. While not every disclosure of the commission of a sexual offense constitutes a complaint, we agree with the Government that Lee's statement to Kim falls within the latter category. True, Lee also requested Kim to act as his interpreter in reporting the offense to Major Turon, but his request did not turn his complaint into a boast, banter or badinage. Cf. United States v Bennington, 12 USCMA 565, 31 CMR 151, page 570; see also State v Gebhard, 73 ND 206, 13 NW2d 290.

As to Major Turon's testimony, the Government advances a number of cogent arguments to sustain its admissibility. Suffice it to note only that Kim was patently Lee's agent for the purpose of making the translation. With the establishment of that relation-

---

[1] We need go no further than this specific exception. We put aside, therefore, consideration of whether in other prosecutions involving absence of consent by the victim, such as robbery and larceny, evidence of "fresh complaint" is admissible to corroborate the witness. See Wigmore, Evidence, 3d ed, § 1142; People v Alex, 260 NY 425, 183 NE 906 (1933).

[2] At the same time, Lee complained of the incident that occurred on August 28. He explained that he did not report that incident at the time it occurred because the accused was his "employer"; but since the accused had repeated the act, he was obliged to disclose both offenses. The accused was acquitted of the August offense. Consequently, if there was error in the admission of complaint of this offense, it was not prejudicial.

ship, "the translation heard by the other party may be received in evidence." United States v Plummer, 1 USCMA 373, 375, 3 CMR 107. Professor Wigmore indicates that Lowe v State, 97 Ga 792, 25 SE 676, holds that a complaint otherwise timely and admissible is inadmissible in evidence if it is a *second* complaint. Wigmore, 3d ed, § 1135, footnote 5. Although there is some language in the *Lowe* opinion which supports the conclusion, we do not believe the case goes that far. In Davis v State, 202 Ga 13, 41 SE2d 414, the victim of a rape reported the attack at noon to her sister. Later that day she told her sister-in-law about the assault. The latter testified to the complaint. Although the Supreme Court of Georgia referred to the *Lowe* case in its opinion, it found no error in receiving the testimony of the sister-in-law. In De Salvo v People, supra, page 29,

the Supreme Court of Colorado rejected a claim that evidence of complaint was inadmissible because it was second in time and the law allows evidence of only one recent complaint. It said: "We know of no such principle of law." In any event, if some courts adhere to a rule of exclusion of a second complaint, in our opinion, the better rule is that if the evidence of complaint is otherwise admissible, it is not inadmissible because it is second in point of time. See United States v Stell, 4 CMR 490, 495; Commonwealth v Ellis, 319 Mass 627, 67 NE 2d 234; People v Hiddleson, 389 Ill 293, 59 NE2d 639; State v Gebhard, supra. We conclude, therefore, that the law officer properly admitted Major Turon's testimony.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.