UNITED STATES, Appellee,

v.

**Richard L. THOMPSON, Airman First Class, U. S. Air Force, Appellant.**

No. 31,610.
ACM 21894.

U. S. Court of Military Appeals.

June 13, 1977.

*Major Bruce R. Houston,* argued the cause for Appellant, Accused. With him on the brief was *Colonel Jerry E. Conner.*

*Major John A. Cutts, III,* argued the cause for Appellee, United States. With him on the brief was *Colonel Julius C. Ullerich, Jr.*

Opinion of the Court

PERRY, Judge:

The appellant was convicted by a general court-martial at Dyess Air Force Base, Texas, of taking indecent liberties with two females, both of whom were under the age of 16 years, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to a bad-conduct discharge and confinement at hard labor for 6 months, and the sentence was approved by the convening authority. The United States Air Force Court of Military Review has affirmed both the findings and sentence. Subsequent to the lower court's affirmance of his conviction, the appellant's bad-conduct discharge was suspended until August 7, 1976.

Before this Court, the appellant complains that the military judge gave an erroneous instruction to the members of the court on the law of fresh complaint. His contention is twofold. First, he contends that the testimony of the mothers of the two young female victims did not qualify as evidence of a "complaint." Second, he contends that the testimony of both women

was inadmissible as fresh complaint, inasmuch as neither of the two victimized daughters, ages 6 and 7, had testified at trial that they did not "consent" to the alleged sex acts.[1]

The two young victims testified at trial that while they were playing outside, the appellant came upon the scene and offered to assist them in untangling a string which was caught in the spokes of one of their bicycles. Afterward, he enticed them into his van and allegedly performed indecent acts on them, the details of which are unnecessary to relate here.

Purporting to give evidence of fresh complaint of what their young daughters had told them about their alleged involvement with the appellant in his van, each mother testified following the conclusion of her daughter's testimony. One of them recounted that on the date of the alleged occurrence her daughter had been playing outside from 5:00 p. m. until about 6:00 p. m., at which time she became upset when her daughter finally returned home late for dinner. As to the "complaint" made thereupon by her daughter, she testified in response to questions by the trial counsel:

Question: Did she [the daughter] have an opportunity to say anything to you prior to the time you let her know you were upset with her?

Response: Not much. She said she could not eat dinner right now because she had to go back outside and I told her she could not go outside. She went to the front door and tried to go out and I asked her why she had to go outside and *she said that a man in a van was coming back to bring her some shoes and she had to wait by the door, go out and wait until he brought her the shoes.* [Emphasis added.]

Similarly, the other child's mother was asked by trial counsel whether she could recollect any unusual interlocution which she had with her daughter on the evening of the event, to which her response was:

Yes, that was the time . . . [she] was telling me about this evening—this—man—she came in at supper time and was in a hurry to get back outside and I asked her why and *she said she had met this nice man who was a CE man and his name was Rick and she said that he told them he had underwear and shoes to give them—his little girl had outgrown them.* [Emphasis added.]

The military judge, having determined that the mothers' testimony constituted evidence of "fresh complaint," gave the following charge to the court members:

This will pertain to the testimony of . . . the mothers, who testified earlier. Evidence of fresh complaint is admitted solely for its bearing, if any, on the credibility of the complaining witnesses—in this case, [the two little prosecutrixs].

---

1. A division of authority exists as to whether fresh complaint is admissible in other than a prosecution for rape. *Compare People v. Smith*, 55 Ill.App.2d 480, 204 N.E.2d 577 (1965), *with People v. Burton*, 55 Cal.2d 328, 11 Cal. Rptr. 65, 359 P.2d 433 (1961). It is Professor Wigmore's view that evidence of complaint "should be admissible for *other offenses* usually involving force." 4 Wigmore, Eivdence § 1135(b) (Chadbourn rev. 1972). Earlier courts-martial manuals indicated that such evidence was admissible to corroborate the testimony of the victim, even without regard to the question of consent. *See, e. g.,* Manual for Courts-Martial, United States, 1951, paragraph 142c. Considering a number of decisions by this Court, the draftsmen of the 1969 Manual for Courts-Martial concluded that there was "no reason whatsoever why fresh complaint should be admissible where there is no such testimony." Department of the Army Pamph-

let No. 27–2, Analysis of Contents, Manual for Courts-Martial, United States, 1969 (Rev.), at 27–13. *United States v. Goodman*, 13 U.S.C. M.A. 663, 33 C.M.R. 195 (1963); *United States v. Annal*, 13 U.S.C.M.A. 427, 32 C.M.R. 427 (1963); *United States v. Bennington*, 12 U.S.C. M.A. 565, 31 C.M.R. 151 (1951). On that basis the provision in the earlier manuals was changed. Apparently, appellate defense counsel perceive paragraph 142c of the 1969 Manual as now establishing as a prerequisite to the admission of evidence of fresh complaint that the victim has first testified that consent was lacking. Whether this is a proper construction, a construction which is also perplexed here by the application of the principle that a female child of such tender years is never legally capable of consenting to sexual activity, need not now be adjudicated in light of our disposition of the case.

The court is advised that a fresh complaint is one made within a reasonably short time after the event, considering all of the circumstances of the case. For example, a person in a state of shock, surprise, or excitement might not reasonably be expected to complain until after the effects of such state have worn off.

 Conspicuously, neither woman's testimony amounted to a "complaint,"[2] fresh or unfresh, since neither of the witnesses testified to what their daughters had related to them concerning the appellant's conduct. Rather, they only testified that their daughters told them that the appellant offered to give them some underpanties and some shoes. At a minimum, we believe, in order for an extrajudicial declaration to constitute a complaint, it must contain, per force, the alleged statement which delineates the nature of the offense, i. e., that the alleged victim did complain to the witness of a sexual offense.

We have held in *United States v. Pitasi*, 20 U.S.C.M.A. 601, 605, 44 C.M.R. 31, 35 (1971), that the failure of the alleged victim of a sexual offense to "indicate the nature of the alleged action stating no more [to the witness] than this unnamed person had 'made a pass at him,' " was, indeed, not a complaint. Therefore, it was prejudicially erroneous for the military judge to have permitted the witness to testify that his roommate, following the initial alleged sexual offense, had told him that an officer had made a pass at him that particular evening. Comparatively, we perceive the purported "complaint" in the instant case as less precise than the one in *Pitasi*. There, a victim claiming that another man made a "pass at him" at least adumbrates sodomy. Here, the little girls' claims, as testified to by their mothers, that a man will bring them back some panties and shoes, falls fatally short of information which might have formed any basis for a determination that fresh complaints had been made.

In addition, under prior decisions of this Court fresh complaint must consist of the victim of an alleged sex offense having communicated his or her complaint to the witness while in a state of shock, outrage, agony and resentment—the adrenergic circumstances which prompted the report.[3] *United States v. Goodman*, 13 U.S.C.M.A. 663, 33 C.M.R. 195 (1963); *United States v.*

2. Paragraph 142c, Manual for Courts-Martial, United States, 1969 (Rev.), states as follows:

> In a prosecution for a sexual offense in which an alleged victim of either sex has testified that consent was lacking, evidence that the alleged victim made a complaint of the offense within a reasonable time after its commission is admissible for the purpose of corroborating the testimony of the victim, and this is so whether or not lack of consent is an element of the offense and even if the credibility of the victim has not been directly attacked. This evidence is to be restricted to proof that the complaint, including the identification of the offender, was made. A description of the details of the offense given during the course of making the complaint is not admissible under this rule. However, a description of the details of the offense related during the course of making the complaint may be received in evidence if admissible as evidence of a consistent statement for the purpose of corroboration under 153a or if admissible under the spontaneous exclamation (142b), or any other, exception to the hearsay rule.
>
> In a prosecution for a sexual offense in which lack of consent is an element or in which the alleged victim has testified that consent was lacking, evidence that the alleged victim failed to make a complaint of the offense within a reasonable time after its commission is admissible. If evidence of such a failure to make a complaint has been received, the military judge, or the president of a special court-martial without a military judge, should, upon request by the defense, instruct the members of the court in open session that this evidence may be considered only on the question of the credibility of the testimony of the alleged victim generally and, if lack of consent is an element of an offense in issue, also on the question as to whether or not there was consent.
>
> Sexual offenses include all offenses of a sexual nature, such as rape, carnal knowledge, sodomy, attempts to commit these offenses, assault with intent to commit rape or sodomy, and indecent assaults or acts.

3. *See generally* 4 Wigmore, Evidence §§ 1134–39 (Chadbourn rev. 1972); 75 C.J.S. *Rape* §§ 53–55 (1952); 65 Am.Jur.2d *Rape* §§ 76–81 (1972); 3 Underhill, Criminal Evidence §§ 757–59 (5th ed. 1957).

*Bennington,* 12 U.S.C.M.A. 565, 31 C.M.R. 151 (1961); *United States v. Mantooth,* 6 U.S.C.M.A. 251, 19 C.M.R. 377 (1955). Indeed, "the statement must have been made under circumstances calculated to give some special trustworthiness to it . . . that in the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflecting and sincere expression of one's actual impressions and belief." 6 Wigmore, Evidence § 1749 (Chadbourn rev. 1976). Needless to say, then, without such circumstances, the admission of the fact of complaint "is utterly devoid of factors upon which the admissibility of that evidence might be predicated,"[4] and, hence, its admission is deemed error.[5] *See United States v. Goodman, supra; United States v. Mantooth, supra.*

As demonstrated in *United States v. Bennington, supra,* this Court found error where the military judge permitted testimony which purported to constitute evidence of fresh complaint since "there was no showing the communication was occasioned by shock, outrage, resentment or even disgust." *Id.* at 570, 31 C.M.R. at 156. Particularly noting therein the adrenergic-less circumstances which formed no basis for the introduction of that evidence, we observed that the complaining witness made no outcry to the police who happened upon the scene of the alleged offense; that he was not "sufficiently bothered" over the alleged sodomy to arouse his roommate; and that he was not disturbed by the occurrence at the time he reported it.

In accord is *Callahan v. United States,* 240 F. 683, 685 (9th Cir. 1917), where a prior statement by the alleged victim of a statutory rape was ruled inadmissible in the following language:

> In the case at bar there is entire absence of circumstances to justify the admission of testimony such as that given by Laura Herrington. The statement of which she testified was made to her, not as a complaint, not as the expression of outraged feeling, not under excitement produced by an external shock, but purely as a matter of interesting information in a casual conversation.

Herein, it is evident from the quoted testimony of the victims' mothers that such circumstances were not present here either, which, we believe, further renders their testimony inadmissible as evidence of fresh complaints.

Counsel for the Government argues, *inter alia,* that the appellant has not been prejudiced by the mothers' testimony. But we are of the view that their testimony served to corroborate the statements of the little girls whose testimony was the most crucial in the case. Determination of the case turned on their credibility. Under the circumstances the danger is great that the verdict of guilty flowed from the corroborating testimony of the mothers and the later instruction of the trial judge that they could properly consider that testimony as evidence of fresh complaint.

Also, the Government argues that the appellant is deemed to have waived the error because his counsel did not object to the testimony or the instruction. However, we cannot ignore such a patent prejudicial error notwithstanding the nescience of the judge and the trial defense counsel to have perceived the error. Indeed, the military judge must bear the primary responsibility for assuring that the jury is properly instructed, *United States v. Graves,* 23 U.S.C.M.A. 434, 437, 50 C.M.R. 393, 396, 1 M.J. 50, 53 (1975), and must see that the accused receives a fair trial. *See also United States v. Bryant,* 3 M.J. 9 (C.M.A.1977); *United States v. Grunden,* 2 M.J. 116 (1977).

For the reasons set forth above, the appellant's conviction is hereby reversed, the

---

4. *United States v. Bennington,* 12 U.S.C.M.A. 565, 571, 31 C.M.R. 151, 157 (1961).

5. We perceive that the only basis for the admission of the mothers' testimony was supposedly to negate silence of the victims, and we do not perceive any other exceptions (res gestae declarations) to the hearsay rule upon which the testimony in question could have been legitimately admitted as corroboration of the little girls' testimony.

findings and sentence, are accordingly set aside, and the record of trial is remanded to the Judge Advocate General of the Air Force. A rehearing may be held.

Chief Judge FLETCHER and Judge COOK concur.