UNITED STATES, Appellee

v

WALTER D. HILL, Captain, U. S. Army, Appellant

9 USCMA 659, 26 CMR 439

No. 11,273

Decided September 26, 1958

*Captain Arnold I. Melnick* argued the cause for Appellant, Accused. With him on the brief were *A. Jeffrey Bivins, Esquire,* and *Colonel Edward M. O'Connell.*

*First Lieutenant Thomas M. Lofton* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel John G. Lee* and *Major Thomas J. Nichols.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

In this case, the accused, a Class B Finance Agent, was convicted of making a false official statement relative to measures designed to safeguard funds entrusted to him, and of larceny of $2732 of such funds. We granted his petition for review to determine three issues which we shall discuss in order of their presentation.

The first issue concerns a defense contention that the law officer curtailed cross-examination of a prosecution witness to the prejudice of the accused. The alleged curtailment occurred during presentation of the evidence material to the false official statement charge.

The evidence in question tended to show that the accused and Major Daily were Class B Finance Agents at Cuidad Trujillo, Dominican Republic. Each maintained the funds allotted to him in a small locked cash box, and both stored their cash boxes in a single safe to which only they and an office assistant had the combination. Shortly after Major Daily's assumption of his duties, the Deputy Finance Officer, U. S. Army Caribbean, inspected the funds, records, and security measures taken to safeguard public monies. Since the regulations governing these activities required the combination of all safes be changed every six months, or, upon change of

custodians, the inspecting officer sought to determine when the combination of this safe had been changed. According to this officer's testimony, he was informed by either the accused or Major Daily that the change was made on a date closely following the latter's assumption of office. Major Daily was the next witness. He testified simply that the combination had not been changed, that he had not informed the inspecting officer that it had been, and did not hear the accused make any statement about it. Thereafter, it was shown that, testifying under oath before a board of officers convened at his own request to determine the circumstances of a loss of funds, the accused acknowledged he had falsely represented that the combination had been changed "to avoid a rather apparent gig."

Cross-examination of Major Daily by defense counsel was both extensive and effective. Although numerous matters adversely affecting his credibility were elicited, the cross-examination was focused principally upon the use to which the witness had put $100.00 of his funds. Concerning this it was shown that on several occasions he had claimed $981.27 in cash on hand, when in fact his fund consisted of $881.27 in cash and a note, or "receipt," for $100.00 signed by himself, reading "I owe the cash box $100"; that he had reported no activity in the fund, and that subsequent to a major loss he had asserted he had a balance of $261.27 without indicating this included the aforementioned receipt; and, finally, upon discovery of the major loss he redeemed the note by replacing the $100.00 with borrowed funds. The witness fully explained his use of the fund for personal reasons, declaring he did not consider it resulted in a shortage or an offense of any kind for he always had sufficient money to cover the note. Thereupon, the following questioning occurred:

"Q. [DC] Major Daily, have you ever withheld information from that board of officers?

"A. [Witness] The three-man board?

"Q. Yes.

"A. I don't know. I can't think of anything.

"Q. Isn't it true that you withheld the whole story about the piece of paper from that board?

"A. They didn't ask me.

"Q. Did they ask you what the events of the 27th were?

"A. Oh, yes.

"Q. You didn't tell them anything about the paper?

"A. I felt it was so inconsequential that I didn't even mention it.

"Q. But you didn't think it was inconsequential that you borrowed $100 and quickly put it in the funds?

"A. I quickly got the hundred dollars and put it back in about an hour.

"Q. You are being tried for a larceny which occurred on that date?

"PROSECUTION: I object to the question.

"DEFENSE: What's the basis of your objection?

"PROSECUTION: I don't believe it has any relevancy at this point and it is not material to the issue. Being under charges is not equivalent to a conviction.

"DEFENSE: It doesn't have to be a conviction. It is misconduct. I am not impeaching an accused. I am impeaching a witness who is not being charged here today.

"LAW OFFICER: The objection is sustained."

By sustaining this objection, it is contended, the law officer unduly curtailed cross-examination of an important witness upon a crucial point, and thereby prejudiced the accused.

In the context of the reported interrogation, just which offense the defense counsel was referring to when he asked "You are being tried for a larceny which occurred on that date?" does not clearly appear. Equally reasonable are the conclusions that the reference was to Major Daily's unauthorized use of $100, or to the substantial loss discovered at the later date. Under either interpretation of the question, the law officer's disposition of the prosecution objection was correct.

The credibility of a witness may be

impeached by a showing of a conviction of certain types of crimes, or, in a proper case, by acts of misconduct. United States v Moore, 5 USCMA 687, 18 CMR 311; United States v Hutchins, 6 USCMA 17, 19 CMR 143. The fact that charges have been preferred against an individual, standing alone, is no indication that his credibility is affected. A mere charge carries with it no implication of guilt. Souza v United States, 5 F 2d 9 (CA 9th Cir) (1925); Coulston v United States, 51 F 2d 178 (CA 10th Cir) (1931). See also United States v Deain, 5 USCMA 44, 17 CMR 44. Under this well-established rule, had counsel's question related to a charge of larceny arising out of Daily's use of the $100, the inquiry was improper and correctly curtailed.

However, when the reason for a rule disappears, or more cogent and different reasons exist, an exception is frequently found in its application. So, when a witness is under indictment for the same offense, or an offense closely related to that concerning which he testifies, his testimony may be colored by that fact. Keveney v State, 109 Ohio 64, 141 NE 845; Gray v State, 4 Okla Crim 292, 111 Pac 825, 32 LRA (NS) 142. See also Alford v United States, 282 US 687, 75 L ed 624, 51 S Ct 218 (1931).

In Gray v State, supra, it was held:

". . . If two persons are indicted for the same offense, or for different offenses, and it should appear from the evidence that from the acquittal or conviction of one even a slight inference of the guilt or innocence of the other could be drawn, or that the fate of one could have any probable bearing, however remote, upon that of the other, and one should testify either for or against the other, under such circumstances it would not be error for either party to ask the witness and require him to answer whether he was then under indictment for that same or such different offense; . . ."

The defense contends that the principles of these cases are applicable here for the losses forming the basis of the larceny charge against the accused and those sustained by the witness occurred simultaneously. Thus, a single offense committed by a single individual is indicated, and this is a circumstance which puts Major Daily's interest in the outcome of the proceeding beyond dispute.

At the same time the challenged ruling was made, there was no evidence of the circumstances of the theft charged against the accused before the court-martial or the law officer. Under the circumstances, there was no basis for a conclusion that the losses now described constituted a single act of larceny and no foundation upon which the last-mentioned rule could rest. In this particular, we again note that a law officer's ruling generally depends upon the state of the evidence *at the time it is made*. United States v Richard, 7 USCMA 46, 21 CMR 172. Out of an abundance of caution, however, we have examined this ruling in the light of *all* the evidence and conclude that the same result obtains.

Although the record shows that both losses were called to official attention at the same time, it also discloses that the accused's shortage occurred long before this. Indeed, the only tenable view of the evidence demonstrates beyond doubt that more than six weeks before the loss was discovered, the accused had engaged in a series of financial transactions designed to conceal this shortage from official inspection. No such showing was made, or even hinted at, with respect to the funds entrusted to Major Daily.

Consequently, from whatever vantage point the evidence is viewed, it does not support the conclusion that both funds were stolen by the same person at the same time.

The second issue upon which the petition was granted relates to a deficiency in the instructions upon the larceny charge. On this subject the law officer advised the court-martial as follows:

". . . An intent to steal may be inferred from a wrongful and intentional handling of the property of another in a manner likely to cause him to suffer a permanent loss thereof. It may be presumed that one who has assumed the custody of the property of another has stolen such property if he does not or cannot account for or deliver it at the time an accounting or delivery is required."

This, the defense contended at trial, and again argues before us, would permit an intent to steal to be inferred from an intentional dealing with property motivated by less than an intent permanently to deprive. If this instruction stood alone, we would be disposed to agree. However, immediately before uttering the challenged statements, the law officer declared:

"The taking or withholding must be accompanied by an intent *permanently* to appropriate the property to the use of the wrongdoer or the use of any person other than the true owner."

Immediately after giving the questioned advice he defined the sense in which he used the term "presumption," i.e., a permissive inference, the weight of which was a matter for the court's exclusive determination based upon the entire evidence. This sufficiently clarified the term. United States v Ball, 8 USCMA 25, 23 CMR 249. Following this, he warned *that negligence could not be made the basis for a finding of guilt.* This eliminated any remaining possibility of harm, for the defense position at trial was that the loss or theft, as the case might be, was in no way attributable to the accused.

Under the final issue argued before us, the defense urges that the evidence of the fact of a loss was limited to a pretrial admission of the accused. From this declaration the argument proceeds to the conclusion that none of the evidence touching the larceny charge was admissible and, therefore, the finding should be set aside.

Without attempting to point out each of the shortcomings of this argument,

it is sufficient to observe that the competent evidence established the accused's accountability for $2732.27; that he reported the loss of $2722—later amended to $2732—to his superiors requesting appointment of a board of officers; that when asked to produce all Government funds in his possession, he turned over his cash box, the only known depository used by the accused, and it contained only 27 cents. In addition, stipulations of testimony presented in evidence by the defense leave no doubt as to the amount of the loss. Since the accused's position on this issue of evidential sufficiency is limited to that narrow ground, there is no necessity for further detailing the factual basis for the finding on this charge. It is sufficient to note that it is ample.

The decision of the board of review is affirmed.

Judge LATIMER concurs.

FERGUSON, Judge (dissenting):

I have grave doubts as to the correctness of the instruction that the majority upholds on an "as a whole" basis, but I need not concern myself with that in view of the clearly unwarranted restriction of cross-examination by the law officer.

The question here was clearly proper for the purpose of developing any interest or bias of the witness, Major Daily. The witness and the accused were the only persons, other than a clerk whose fidelity apparently was unquestioned, who had access to the safe in question and it appears both were under charges resulting from shortages occurring in the funds kept in that safe. The natural tendency of the witness under such circumstances to shift the blame to the accused in an effort to clear himself is so obvious as to require no discussion. The propriety of the question is elementary. Courts have traditionally upheld the right to develop the interest, bias, or prejudice of the witness in any case. The improper restriction of cross-examination by the law officer in this case could only result in the court-martial deliberating on

the issues without being informed of the great interest of the witness, Major Daily. How they could correctly weigh the evidence and determine the issues when the law officer refused to permit defense counsel the right of eliciting these matters on cross-examination, I do not know. Adequate cross-examination has always been considered of great aid in the clarification of issues and the development of truth. The Supreme Court, in Alford v United States, 282 US 687, 51 S Ct 218, 75 L ed 624, cited by the majority, refers to the right of cross-examination as a "substantial right" and "one of the safeguards essential to a fair trial." Failure to allow the question to be answered denied the accused the protection of that fundamental safeguard.

I would reverse the findings of guilty and order a rehearing.