UNITED STATES, Appellee

v

JOHN J. ROEDER, Sergeant,
U. S. Army, Appellant

17 USCMA 447, 38 CMR 245

No. 20,628

March 29, 1968

*Captain Raymond A. DiLuglio* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Major David J. Passamaneck,* and *Captain Kenneth J. Stuart.*

*Captain William R. Steinmetz* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick* and *Major John F. Webb, Jr.*

## Opinion of the Court

KILDAY, Judge:

Appellant was arraigned before a general court-martial convened at Headquarters, 4th Infantry Division, Republic of Vietnam, charged with rape and assault by striking with his fists, and thereby intentionally inflicting grievous bodily harm, in violation of Articles 120 and 128, Uniform Code of Military Justice, 10 USC §§ 920 and 928, respectively. He pleaded not guilty as charged but guilty to the lesser included offense of assault and battery. He was found guilty of the offenses of rape and assault and bat-

tery and was sentenced to confinement at hard labor for one year, to forfeiture of all pay and allowances, and reduction to the grade of E-1. Intermediate appellate authorities approved the findings and sentence. We granted review to consider several issues which will be hereinafter stated.

A short summary of the evidence is necessary to a proper resolution of the granted issues.

The complaining witness testified that she was on her way home by bicycle when the appellant and another

American soldier stopped her to check her identification. She became afraid and started to run away and the appellant chased her down a trail. He caught her, forced her to the ground and struck her on the face, mouth, neck, and chest. She tried to fight him but he tore off her clothes and had intercourse with her. After the other American soldier had intercourse with her, although she did not want to allow it, the appellant returned and struck her again in the mouth. As she started back to her home, naked from the waist up and bleeding from the mouth, she passed the American headquarters. According to her further testimony, some American saw her and, through an interpreter, asked what had happened. She told the interpreter, "I was raped and hitten [sic] by two American GI's." She was then taken to the battalion aid station by the company commander, who had been called to the scene. On the way, she again told her story, through the same interpreter, of being raped and beaten.

The testimony of the American sergeant who first encountered the complaining witness was entered by stipulation. Therein he averred that the interpreter did not say anything to him about a rape being involved. He had no indication from any source whatsoever that there was an allegation of rape or that a rape was involved in the case at all at that time. Similarly, the lieutenant, who was the second platoon leader, testified that this same interpreter questioned the woman in his presence. At no time was the fact of rape mentioned. He did learn that she had been struck in the face and when he asked who had done it she pointed at the appellant who, along with others, was present at the time.

The company commander, a captain, who had been called to the scene, learned from the lieutenant "what had happened." Because of the obvious injury to her face, he proceeded to take her, and others, to the battalion aid station. On the way, they stopped to fix a flat tire and the captain decided to find out for himself what had happened. Through the interpreter he asked the woman what had happened and she didn't at first respond. Then he told the interpreter to ask her if she had been raped by the two GI's and she replied in the affirmative. To his question whether both GI's had beaten her, she replied that only one beat her and gave a description that fit the appellant.

In his defense, the appellant testified that he twice had intercourse with the complaining witness and that she consented each time. When he offered her 300 piasters, she refused and started to make a considerable noise. As she attempted to scream he hit her with his open hand on the lip to shut her up. He denied threatening her in any manner; she did not appear frightened nor did she attempt to run away.[1]

It was the testimony of the company commander which gives rise to our first granted issue. At trial it was established that the interpreter was not available to testify as he was absent without leave. Defense counsel objected when the captain began to testify as to his attempt to learn what had happened, on the ground that the testimony was (1) hearsay, and as such inadmissible, having been obtained through an interpreter, and (2) not fresh complaint, having been elicited by direct questioning and some time after the alleged offense. After an out-of-court hearing during which the issue was explored, the law officer denied the objection. The correctness of the law officer's ruling is the issue under consideration.

Manual for Courts-Martial, United States, 1951, paragraph 141, provides in pertinent part as follows:

"STATEMENTS MADE THROUGH INTERPRETERS.—As

<hr>

[1] On cross-examination, the complaining witness admitted hearing her husband calling her name after the acts of intercourse. She denied the appellant offered her money but agreed that she has presented a claim for damages to the United States Government in the amount of 80,000 piasters.

a general rule, a statement made through an interpreter may be proved only by the testimony of the interpreter or by other evidence of the statement itself, and may not be proved by evidence of the interpreter's translation. However, as an exception to this general rule, such a statement may be proved by evidence of the interpreter's translation if the interpreter was acting as the agent of the person who made the statement *and such person is the accused,* or is a co-conspirator or accomplice of the accused and made the statement in pursuance of the common venture, or is a witness and proof of the statement would tend to impeach his credibility." [Emphasis supplied.]

For an extended discussion of this issue, see United States v Kauffman, 14 USCMA 283, 294, 34 CMR 63.

Clearly, the interpreter was not the agent of the accused. He was, as decided by the law officer at ▉▉▉▉▉ ▉ the time of the trial, the agent of the complaining witness and of the American authorities utilized for the purpose of determining what had taken place. Roeder was not even consulted. Assuming he would testify as to fresh complaint, the interpreter, had he been present at the trial, could have testified as to what she had related to him. Not being available, any testimony relative to his translation of her statements was hearsay and inadmissible. The fact that he was the agent of the alleged injured party does not render such testimony admissible. United States v Kauffman, supra, and numerous cases cited therein. The Government, however, contends that in United States v Annal, 13 USCMA 427, 32 CMR 427, we established another exception to this general rule to provide for the admissibility of such testimony where a sex offense is involved and the matter concerns the issue of fresh complaint, itself an exception to the hearsay rule. We need not decide whether this testimony involved fresh complaint or answers given in reply to a direct question as contended by the defense (cf. United States v Anderson, 14 USCMA 627, 34 CMR 407) for *Annal* is distinguishable. While *Annal,* as here, also involved a sex offense and the issue of fresh complaint, there was, as we noted in a footnote to *Kauffman,* at page 295, no objection by Annal's defense counsel to the testimony of his commanding officer and the interpreter himself testified substantially to the same effect. Since the evidence was cumulative, it had no prejudicial effect on Annal's conviction.

Because of the nature of the offense, one accused of a sexual crime should be given the full measure of every legal right in an endeavor to maintain his innocence. United States v Goodman, 13 USCMA 663, 668, 33 CMR 195. As the framers of the Manual noted, " 'It is true that rape is a most detestable crime . . . ; but it must be remembered that it is an accusation easy to be made, hard to be proved, but harder to be defended by the party accused, though innocent.' " Manual for Courts-Martial, supra, paragraph 199a, page 355. See also United States v Chadd, 13 USCMA 438, 32 CMR 438. In the case at bar, the only real issue to be resolved by the fact finders was that of consent or lack thereof. The fact of sexual intercourse between the parties was uncontested. Since the inadmissible hearsay, referred to above, substantiated the complaining witness' charge that she was forced to submit, we are constrained to hold that its admission was prejudicially erroneous. As such, reversal is required. United States v Anderson, supra.

In view of the action we take with regard to the first issue, we need not dwell at length on the other assignments of error.

In his instructions to the court, the law officer, at one point, declared that ▉▉▉▉▉ ▉ "Force and want of *resistance* are indispensable to this offense." (Emphasis supplied.) Obviously the emphasized word is incorrect. Paragraph 199a of the Manual, supra. Indeed, the law officer had already advised the triers

of fact that want of *consent* was an element of the charge of rape. In further discussing this element, he reiterated on four occasions that they must find as a fact that the complaining witness did not consent. It appears, therefore, that the use of the word was a slip of the tongue and when we consider the instructions as a whole we are satisfied that the error was harmless. See United States v Roth, 16 USCMA 465, 37 CMR 85.

Finally, we consider that instruction of the law officer relative to the defense evidence that "the accused was under the mistaken belief that the alleged victim, Mrs. . . . , of her own free will consented to the act of intercourse. With respect to this evidence, the court is advised that if the accused was laboring under such mistake and if his mistake was honest and reasonable, he cannot be found guilty of rape." Appellate defense counsel contend that the mistake need only be an honest one and that the reasonableness thereof has no place in consideration of the offense of rape.

A short answer to this contention is that the instruction given was specifically requested by defense counsel at trial. In such circumstances, it will not be noted for the first time on appeal. See, generally, the discussion of this rule in United States v Dupree, 1 USCMA 665, 5 CMR 93. See also United States v Bouie, 9 USCMA 228, 26 CMR 8.

Holding as we do that the law officer erred to the substantial prejudice of the appellant by admitting, over defense objection, inadmissible evidence of an alleged fresh complaint, we reverse the decision of the board of review as to accused's conviction for rape. The record of trial is returned to the Judge Advocate General of the Army. The board of review may reassess the sentence on the basis of accused's conviction for assault and battery or a rehearing may be ordered.

Chief Judge QUINN and Judge FERGUSON concur.