**UNITED STATES**

v.

**Staff Sergeant William D. SPEER, FR 448–46–7865 Detachment 5, United States Air Force Postal and Courier Service, United States Air Forces in Europe.**

**ACM 21915.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 11 June 1975.

Decided 23 Jan. 1976.

Appellate counsel for the Accused: Colonel Jerry E. Conner and Major Bruce R. Houston.

Appellate counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Frederick P. Waite.

## DECISION

ORSER, Judge:

Tried by a general court-martial, the accused was convicted, despite pleas to the contrary, of a single offense of larceny of lawful currency and postal money orders of the United States valued at $15,649.52, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. The approved sentence provides for a bad conduct discharge, confinement at hard labor for one year, forfeiture of all pay and allowances and reduction to the grade of airman.

Appellate defense counsel have invited our attention to eight assertions of error advanced on the accused's behalf by his trial defense counsel and have submitted a brief in support of two. In our judgment, all but two of the errors urged are either without merit or were considered by the staff judge advocate in his review and properly resolved adversely to the accused. Further discussion herein is accordingly unwarranted.

The first of the remaining errors we here address contends:

> the military judge erred to the prejudice of the accused in unduly limiting cross-examination of government witness Heck as to statements made to him by the accused during a continuing dialogue concerning the offense.

During the direct examination of a Major Heck, the trial counsel elicited testimony that on two separate occasions, some four months apart, the accused, in the course of routine conversations, volunteered incriminating statements respecting the offense for which he was tried. On the first occasion, he expressed the notion of being perplexed that though he was accused of taking approximately $15,000.00, he could only recollect having taken some $12,000.00. On the second occasion, he spontaneously stated he intended to plead guilty at his forthcoming trial as he believed, testified Major Heck, that "he had some moral obligation to himself to admit to the guilt of this."

During the cross-examination of Major Heck, the defense counsel made an effort to

**1246**

elicit exculpatory statements respecting intent the accused may have voiced during their conversations. The trial counsel objected and, following argument, the military judge permitted the defense counsel to educe such information only if it was related to the two conversations referenced by the witness in his direct examination, or at most, provided the utterances occurred on the same days as the other conversations. Within this limitation, the witness was permitted to testify that on both occasions, the accused indicated he intended to return the money he had taken. And, in a negative sense, on neither occasion did the accused indicate in any manner that he intended to keep any of the money he had appropriated. The defense counsel was not permitted to question the witness respecting other statements of a similar self-serving nature the accused may have made in the course of unrelated conversations.

■ As correctly noted by the staff judge advocate in his review and applied by the military judge at trial:

If only part of a confession or admission or supposed confession or admission of the accused is shown, the defense by cross-examination or otherwise may introduce all other parts of the statement—which may consist of a connected series of statements—that are explanatory of, or in any way relevant to, that part. Manual for Courts-Marital, 1969 (Rev.), paragraph 140a (6).

Within this rule, after Major Heck related the accused's oral incriminating statements, any exculpatory, or self-serving statements the accused may have made contemporaneous with, or in any manner related to the admissions, were admissible in explanation of his intent at the time he took the property in issue. Furthermore, as we recently pointed out in *United States v. Smith*, 50 C.M.R. 634 (A.F.C.M.R.1975), "under military rules of evidence . . . exculpatory, or self-serving statements of an accused are admissible when they are not made under circumstances indicative of insincerity or are not inherently improbable and unworthy of belief." Citing Manual for

Courts-Martial, supra, paragraph 142d; *United States v. Hoy*, 12 U.S.C.M.A. 554, 31 C.M.R. 140 (1961); 4 Wigmore, Evidence, sec. 1144 (Chadbourn Revision). Moreover, and focusing directly on the issue here involved, "under the current Manual rule, it is not even necessary to show, as a prerequisite to its admissibility, that an exculpatory statement was connected or related to an accused's incriminating statement." *United States v. Smith*, supra, at page 636.

■ On the basis of this latter application of the principles discussed, the military judge was overly restrictive in limiting the defense to eliciting possible exculpatory or self-serving statements of the accused only if made in connection with, or on the same day as his incriminating ones. Having so concluded does not, however, necessitate remedial action, for we are convinced the accused suffered no prejudice.

In our judgment, even if the defense had been permitted to attempt to elicit further identical or similar exculpatory statements made by the accused to witness Heck, (and as we read the record that is precisely what counsel had in mind) such testimony, though certainly relevant, would have been largely repetitive. Moreover, in addition to the exculpatory statements respecting the accused's intent concerning which Major Heck was permitted to testify, the accused, in his own testimony, insisted he at all times intended to eventually return the ever increasing sums of money he withheld from the Government. In the circumstances, we are satisfied the defense placed before the court all evidence having a significant bearing on the accused's intent.

The final assigned error warranting our attention asserts:

the military judge's instruction on proof of intent was inadequate and misleading.

After properly instructing the court members on the elements of larceny, as well as the lesser included offense of wrongful appropriation, the military judge, at the request of the trial counsel as to the first sentence and the defense as to the second, further instructed:

An intent to permanently deprive may be inferred from a wrongful and intentional dealing with the property of another in a manner highly likely to cause him to suffer permanent loss thereof. You are, however, cautioned that it is the intent of the accused at the time of the wrongful withholding that governs.

During an Article 39(a) session which preceded the findings instructions, the defense counsel objected to the instruction proposed by the trial counsel. The defense argued, both at trial and on this appeal, that such instruction tends to erroneously make the matter of the accused's intent in larceny an objective rather than a subjective matter. Their position, in essence, is that whereas the critical consideration is what was actually in the accused's mind at the time of the taking of the property, the challenged instruction would permit a conviction simply upon application by the court of a "reasonable man" test. In other words, the instruction created a risk of conviction if the court members determined that the accused's conduct made it "highly likely" the property was gone forever, irrespective of whether or not he, in fact, intended to return it.

When the military judge overruled the defense objection and indicated he would give the proposed instruction, the defense counsel countered with a request for the following instruction:

An intent to only temporarily deprive may be inferred from efforts made to obtain property with which to replace that which has been wrongfully appropriated.

The military judge declined to give the defense requested instruction, but did agree to add to the Government's proposed inference instruction, the referenced cautionary advice that the intent of the accused at the time of the withholding was controlling.

The evidentiary setting from which this instructional controversy arose requires only brief recitation. The Government's evidence, including admissions made by the accused, established that the accused, an assistant Air Force postal clerk at his unit, over a period of many months wrongfully withheld a total of $15,649.52 from the postal money order account of which he was custodian. The defense evidence, including the testimony of the accused, consisted of a concession of misconduct respecting the monetary shortage in the account, coupled with an assertion that at all times the accused's intent was to only temporarily use the money for his own purposes rather than permanently deprive the Government.

According to the accused, the original sum he withheld was for the purpose of settling existing gambling and other debts, and to reinvest the balance in further gambling in an effort to recoup and fully reimburse his depleted account. Unfortunately, his efforts were unsuccessful. He continued to gamble, got deeper in debt, and repeatedly took additional sums of money from his account to cover current losses and reinvest the balance in a vain effort to eventually balance his account. He testified he maintained a record of the total amount withheld from the Government. During the time of this activity, the accused made several unsuccessful efforts to borrow sufficient money from his mother and an uncle to fully reimburse his account. He related that from time to time he did have limited financial success in his gambling ventures and managed to replace portions of the money taken.

On the basis of these circumstances, we do not agree with the defense that the challenged instruction was erroneously misleading or in any other manner unfair to the accused. It is firmly fixed in our jurisprudence that the trial judge, in his discretion, may instruct the court members on recognized justifiable inferences which may be drawn from the evidence. *United States v. Cathern*, 8 U.S.C.M.A. 158, 23 C.M.R. 382 (1957); *United States v. Ball*, 8 U.S.C.M.A. 25, 23 C.M.R. 249 (1957); *United States v. Miller*, 8 U.S.C.M.A. 23, 23 C.M.R. 257 (1957). Speaking to this subject for the United States Court of Military Appeals in the case of *United States v. Biesak*, 3 U.S.C.M.A. 714, 14 C.M.R. 134, 140 (1954), the late Judge Brosman declared:

If an inference is sanctioned as justifiable by juristic experience, as a usual thing we are unwilling to conclude that a law officer has abused his discretion in advising the Court thereof. Naturally, we are not implying that a law officer is authorized to *direct* the Court to accept a particular inference. However, in accordance with our aim to assimilate the status of the law officer, wherever possible, to that of a civilian judge of the Federal system, we shall allow him greater freedom to enlighten court members as to inferences which they may draw from the evidence.

The "juristic" basis for the inference instruction here under scrutiny is contained in the Manual for Courts-Martial, 1969 (Rev.), paragraph 200*a*(6). The referenced paragraph, after noting that the existence of an intent to steal must in the majority of cases be inferred from the circumstances, specifies that "[a]n intent to steal may be inferred from a wrongful and intentional dealing with the property of another in a manner likely to cause him to suffer a permanent loss thereof."

An instruction respecting this inference was sanctioned by the Court of Military Appeals in the case of *United States v. Hill*, 9 U.S.C.M.A. 659, 26 C.M.R. 439 (1958); cf. *United States v. Griffin*, 9 U.S.C.M.A. 215, 25 C.M.R. 477 (1958). In *Hill*, the Court opined that while the instruction might, if standing alone, create a misleading impression that "would permit an intent to steal to be inferred from an intentional dealing with property motivated by less than an intent permanently to deprive," the instruction considered as a whole properly clarified the term. In the case at hand, we, as the Court in *Hill*, are satisfied the contested instruction, when considered in the context of the entire findings instructions, could not have misled the court members to believe that a conviction could be based on anything less than an intent by the accused to permanently deprive.

Of no minor significance, the use of the adjective "highly" as a modifier of the word "likely" in the instruction as given was a factor inuring to the benefit of the accused.

As can be seen from the Manual reference, the inference is ordinarily applicable upon an evidentiary showing of conduct with another's property in a manner that will "likely," that is to say, probably, result in a permanent loss thereof. Here, by contrast, the inference could be employed only if the evidence demonstrated a greater risk of permanent loss than that connotated by the word "likely." Even with the added stricture, however, the evidence before the court was sufficient to permit the inference if the court members chose to draw it. Such evidence clearly portrayed an accused who wrongfully and intentionally dealt with the Government's property—an accused who, by his own admission (the admission by the way of a self-admitted poor gambler) exposed the property to a high risk of loss, and, in fact, did lose a substantial portion thereof, by gambling it away. Without question, such conduct constituted a "dealing with the property in a manner highly likely to cause [the Government] to suffer permanent loss thereof."

Moreover, as observed, the military judge, immediately after giving the questioned instruction, added language stressing that the intent of the accused at the time of the wrongful withholding was the critical factor. And, elsewhere in his instructions, after delineating the elements of the larceny offense, he informed the members that in order to find the accused guilty they had to be satisfied beyond a reasonable doubt:

> that the withholding by [the accused] was with intent permanently to deprive or defraud another person of the use and benefit of the property or permanently to appropriate the same to his own use or the use of any person other than the true owner.

Thereafter, the judge delineated the elements of the lesser included offense of wrongful appropriation which he found to be included in the evidence. In that connection, he properly advised the members that to convict of such offense required a finding, beyond a reasonable doubt, of a temporary intent by the accused to deprive, defraud or appropriate the property to his own use.

Of additional significance, the military judge fully instructed the court on the subject of direct versus circumstantial evidence, and the matter of proving intent by circumstantial evidence. Among other things, he specifically advised the members:

[I]ntent may be proved by circumstantial evidence, that is, by facts and circumstances from which, alone or in connection with other facts, you may, according to the common experience of mankind, reasonably infer the existence of an intent. The weight, if any, to be given an inference of the accused's intent, must, of course, depend upon the circumstances attending the proved facts which give rise to the inference, as well as all the other evidence in the case. It is for you to make the determination.

In these circumstances, we conclude that the challenged instruction constituted a rebuttable inference that could legitimately be drawn from the evidence. In total instructional context, the final determination of the accused's intent was clearly left to the court members. *United States v. Miller* and *United States v. Hill*, both supra.

▉ We further conclude that the military judge did not abuse his discretion in declining to give the defense requested instruction to the effect that an inference of only a temporary intent to deprive may be drawn from efforts to obtain property to replace that wrongfully appropriated. In the first place we are aware of no "juristic" sanction for such an inference. *United States v. Biesak*, supra. Of paramount significance, however, though an accused is entitled to have instructions presented relating to any defense theory for which there is evidentiary support, neither he, nor for that matter the Government, is entitled to have particular favorable facts singled out and given undue emphasis. *United States v. Bellamy*, 15 U.S.C.M.A. 617, 36 C.M.R. 115 (1966); *United States v. Andis*, 2 U.S.C.M.A. 364, 8 C.M.R. 164 (1953); *United States v. Smith*, 13 U.S.C.M.A. 471, 33 C.M.R. 3 (1963); *United States v. Guidebeck*, 32 C.M.R. 828 (A.F.B.R.1962). If trial judges were required to give instructions designed to highlight each individual evidentiary factor presented in favor of the parties, "instructions would become a mixture of magnifications." *United States v. Harris*, 6 U.S.C.M.A. 736, 21 C.M.R. 58 (1956).

Here, the military judge instructed on the elements of larceny, wrongful appropriation, credibility of witnesses, reasonable doubt, the presumption of innocence, the burden of proof and the justifiable inference heretofore discussed. In so doing, he properly submitted to the court members the respective theories of the case. In the circumstances, we are entirely satisfied that the instructions furnished the court members "lucid guideposts" to permit them to "knowledgeably apply the law to the facts" before them. *United States v. Smith*, supra. There was simply no requirement for the military judge, on behalf of the defense, to go beyond the instruction he gave on the lesser included offense of wrongful appropriation put in issue by the accused's exculpatory pretrial statements and his testimony at trial. *United States v. Guidebeck*, supra.

For the reasons stated, the findings of guilty and the sentence are

Affirmed.

ROBERTS, Senior Judge, and SANDERS, Judge, concur.