UNITED STATES, Appellee,

v.

Private E-1 Richard E. LEWIS, SSN 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, United States Army, Appellant.

CM 437109.

U. S. Army Court of Military Review.

26 Oct. 1978.

Major Andrew W. Maron, JAGC, and Captain Grifton E. Carden, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, Major Michael B. Kennett, JAGC, and Captain Carl F. Meyer, Jr., JAGC, were on the pleadings for appellee.

Before MITCHELL, DRIBBEN and FELDER, Appellate Military Judges.

## OPINION OF THE COURT

PER CURIAM:

A general court-martial which included members convicted appellant of rape, an offense denounced by Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. His sentence, approved by the convening authority, extended to a bad-conduct discharge, confinement at hard labor for two years, and forfeiture of all pay and allowances.

Shortly before midnight on 25 October 1977, three soldiers, including the accused, coaxed the alleged victim, Ulrike, a 16-year old German girl, who was hitchhiking at the time, into their jeep. Earlier that evening she had gone from her home in Bedesbach to a discotheque in nearby Kusel. Initially, Ulrike told them she did not want to ride in the vehicle but got in after repeated invitations. The jeep's top was up and the doors were in place. Ulrike sat on the rear seat next to Private Turner, while the accused drove and Private First Class Harris sat on his right. Ulrike testified that although she was apprehensive, she finally agreed to enter the jeep because she felt threatened by being on the deserted street with the three foreign soldiers and also because she noted the presence of at least one weapon, which she described as a "machine gun" in the vehicle. She asked to be taken to the nearby town of Patersbach, the way to which she described in English as "always along this street."

The evidence of the prosecution and defense is in sharp conflict concerning Ulrike's alleged consensual participation in the night's activities. She testified Turner tried to kiss her while in the back seat of the jeep but she was able to resist with her elbow. The accused drove to Patersbach but did not stop long enough to allow her to exit. Ulrike asked in English to be let out

of the jeep and also feigned pregnancy. The Americans ignored her request and drove away from town.

Ulrike further testified that the accused drove the vehicle into a wooded area, stopped and forced her out against her will. The accused then pushed her to the ground onto a field jacket where he removed her clothing and had sexual intercourse with her. She did not resist physically because she believed it would be to no avail due to the remoteness of the area and the intimidating circumstances existing. She had always been told that nonresistance was the safest response to a rape situation. She testified she unceasingly protested while in the jeep by stating many times they should let her out and by repeatedly asking the soldiers to let her go. She said she feared if she resisted, they might kill her.

After the accused had sexual intercourse with her, the other two soldiers, who had been waiting near the jeep, followed suit in rapid succession. She was then driven back to Patersbach and let out. The accused asked her if he might see her again and she said "tschues" (goodbye) and ran away from the jeep. She did not tell her parents when she got home because it would have upset her mother too much and the subject was not one she could discuss with her father. She told her sister the next evening but from the outset did not want to formally complain against the Americans because of the community stigma which would have followed a public revelation.

The accused's version is that Ulrike, without any oral protests or physical resistance, voluntarily joined in the events. One of his passengers noticed her hitchhiking and she responded favorably to his offer of a ride. While riding around the area Turner informed the accused from the back seat Ulrike was willing to have sexual intercourse with them so he turned down a dirt road to a secluded wooded area. The accused helped Ulrike out of the jeep by extending

his hand and they walked together a few meters to where the sexual intercourse occurred. At no time was she forced or threatened in any way and not once did she indicate a lack of consent but actually assisted him in removing his trousers.

Neither Turner nor Harris testified at the accused's trial. The accused testified Turner advised him later in the night Ulrike had performed fellatio upon him while in the back seat of the jeep before they arrived at the secluded place of sexual invasion. This she denied.

Upon cross-examination Ulrike admitted she had previous sexual intercourse over a period of approximately six months on about fifteen occasions with a former boyfriend with whom she had a serious romance lasting for almost a year. She was still taking birth control pills left over from that amorous liaison.

Appellant asserts the following three grounds of error:

1. There is not sufficient evidence to sustain the findings of guilty.

2. The military judge failed to properly instruct the court members prior to findings.

3. The charge does not affirmatively show a jurisdictional basis for trial of the offense.

I

As to the issue of whether there was sufficient evidence to sustain the conviction, we find that although the actual force applied was minimal, there was effective constructive force and implied threats due to the three to one male to female ratio, the presence of lethal weapons, the state of close confinement in the jeep and the desolate and despairing wooded scene. This reasonably caused the victim to fear for her life and conclude that to offer no physical resistance was her best course of action.[1] There was convincing testimony the victim

1. "To demand that a woman sacrifice her life to protect her virtue not only would represent a misplaced sense of values but would also unjustly raise an inference and an eyebrow whenever a raped woman lived to tell the tale." Note, *The Resistance Standard in Rape Legislation,* 18 Stan.L.Rev. 680, 685 (1966).

repeatedly requested she be released. The dispute centers on whether the act was done by force by the accused and without the consent of the victim. The appellant placed this in issue by testifying the prosecutrix did nothing constituting physical or verbal resistance, thus consenting to the sexual intercourse.

■ Since there was evidence establishing a prima facie case of rape, the credibility of the witnesses was properly presented to the court, the triers of fact. *United States v. Frierson,* 20 U.S.C.M.A. 452, 43 C.M.R. 292 (1971); *United States v. Ferretti,* 1 U.S.C.M.A. 323, 3 C.M.R. 57 (1952). *Cf. United States v. Waller,* 3 M.J. 32 (C.M.A. 1977). Our review of the credible evidence of record leads us to conclude beyond a reasonable doubt that the court members' verdict is correct. *See* Article 66(c), UCMJ, 10 U.S.C. § 866.

## II

The appellant's asserted second ground for reversal is of more substance but still insufficient to compel reversal. At issue is the contention the trial judge erred in failing to give the requested instruction on unchaste character of the victim because of her admitted previous sexual intercourse with her boyfriend. Paragraph 153*b* (2)(b) of the Manual for Courts-Martial, United States, 1969 (Revised edition) [hereinafter MCM, 1969] provides in part, that:

. . . in a prosecution for a sexual offense in which lack of consent is an element, any evidence, otherwise competent, tending to show the unchaste character of the alleged victim is admissible on the issue of the probability of consent by the alleged victim to the act charged (whether or not the alleged victim has testified as a witness) and on the question of the credibility of the alleged victim, and this is so whether or not there was a conviction of any offense involved. For this purpose, evidence of the alleged victim's lewd repute, habits, ways of life, or associations, and of the alleged victim's specific acts of illicit sexual intercourse or other lascivious acts with the accused or others, is admissible, and this is so whether the circumstances to which that evidence refers existed before or after the commission of the alleged offense, unless the military judge or the president of a special court-martial without a military judge, determines as a matter of discretion that the particular evidence would be so remote with respect to the question of consent or credibility as to be irrelevant. *For example, on cross-examination of the alleged victim in a rape case, it would be proper to exclude a question calling for her testimony as to whether, at a time which was thus remote, she had participated in illicit sexual intercourse. On the other hand, it would be improper to prohibit an attempt, on her cross-examination or otherwise, to show that she was engaged in the business of prostitution at or about the time of the alleged rape.* For the purpose of impeaching the credibility of the alleged victim, defense evidence that the victim has an unchaste character is admissible subject to the above conditions, in a prosecution for any sexual offense, even if consent is not an element of the offense. Evidence that the alleged victim of a sexual offense has a good character as to chastity is admissible for the purpose of showing the probability of lack of consent, when lack of consent is material, or to rebut the implications arising from evidence that the alleged victim has an unchaste character. [Emphasis supplied.] *See also* DA Pamphlet 27–9, Military Judges Guide, May 1969, Paragraph 9–27.

The evidence of the victim's previous acts of sexual intercourse with a boyfriend was admitted without objection. It could be argued this is not the character of illicit sexual conduct contemplated by the *Manual* or the *Judge's Guide, supra,* and particularly when measured by what appears to be the present-day standards relating to sexual morality. Moreover, in a mobile, sexually active society there may in certain instances be no such thing as "a reputation for unchastity." The only knowledge of the victim's moral life will be held by her and a

few other people, not by some hypothetical "community."

■ At the Article 39(a), 10 U.S.C. § 839(a) session both trial and defense counsel requested the court to give the unchastity instruction and the military judge agreed. His failure to give the instruction was apparently an oversight. Notwithstanding this failure, the question before this Court is whether the record is fatally defective for want of an unchastity instruction. It is thought not. Certainly the mere lack of chastity is no defense to the charge of rape. *Manual,* paragraph 199*a*; *United States v. Washington,* 2 U.S.C.M.A. 177, 7 C.M.R. 53 (1953). The evidence of the prosecutrix's prior sexual activity was heard by the court members. The trial judge properly instructed them regarding the elements of force being necessary and the absence of the victim's consent in accomplishing the act of sexual intercourse. The jury was adequately charged that the credibility of the witnesses lay within their sole discretion. The requested unchastity instruction is simply a specific admonition that evidence of prior sexual intercourse may be considered by the jury on the issue of the victim's truthfulness concerning the lack of consent. Furthermore, the evidence that Ulrike slept with her boyfriend would not have in reality helped the finders of fact determine on any reasonable basis whether she agreed to have sexual intercourse in the woods with three strangers she had just met in the dead of night.[2] After all, prior sexual activity although admissible, generally has little bearing on the consent issue. The fact that a complaining witness may have consented to sexual relations with others before does not, without more, tend to establish that consent was given on the occasion in question. Therefore, the failure to give such an instruction was harmless error. *United States v. Simmons,* 3 M.J. 865 (A.C.M.R.1977), *pet. denied,* 4 M.J. 80 (C.M.A.1977). *See State v. Mastropetre,* 23

CrL 2514 (Conn.Sup.Ct.1978) 175 Conn. 512, 400 A.2d 276.

### III

■ The appellant requested instructions setting out that an honest and reasonable mistake of fact on his part concerning the victim's consent to the sexual intercourse required a finding of not guilty. After considerable discussion with the trial judge concerning the desirability and efficacy of such an instruction, counsel for the accused stated the instruction the court proposed was a "fair compromise." Therefore the question presented is whether the issues of force and lack of consent are adequately presented in the general instruction.

The appellant would contend the discussion in paragraph 154*a*(4), *Manual,* and the suggested instruction in Department of Army Pamphlet 27–9, Military Judge's Guide, paragraph 6–11 are pertinent.

He relies on the following cases to support the defense of honest and reasonable mistake of fact: *United States v. Steele,* 43 C.M.R. 845 (A.C.M.R.1971); *United States v. Roeder,* 17 U.S.C.M.A. 447, 38 C.M.R. 245 (1968); *United States v. Jones,* 10 U.S.C. M.A. 122, 27 C.M.R. 196 (1959); *United States v. Short,* 4 U.S.C.M.A. 437, 16 C.M.R. 11 (1954); *United States v. Henderson,* 4 U.S.C.M.A. 268, 15 C.M.R. 268 (1954); *United States v. Burt,* 45 C.M.R. 557 (A.F.C.M. R.1972); *United States v. Copeland,* 21 C.M.R. 838 (A.F.B.R.1956). None of these cases held *per se* that mistake of fact was a valid defense to a rape charge.

The instruction given by the court in the case at bar which defense counsel characterized as a "fair compromise" in part stated:

. . . the victim of an alleged rape must have taken such measures to frustrate the execution of her assailant's design as to make want of consent and

2. Over half of the states have "rape shield" laws which restrict the use of evidence respecting the complainant's personal history. Berger "Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom," 77 Colum.L.Rev. 1,

32 (1977). These statutes normally exclude such evidence on the issue of consent. Rudstein, "Rape Shield Laws; Some Constitutional Problems," 18 Wm. & Mary L.Rev. 1, 10 (1976).

**586**

actual resistance reasonably manifest. . . .

Black's Law Dictionary, Revised Fourth Edition 1968, defines "manifest" thusly:
Evident to the senses, especially to the sight, obvious to the understanding, evident to the mind, not obscure or hidden, and is synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evident, and self-evident.

Implicit within the charge that the victim's lack of consent must be reasonably manifest is the subjective understanding or state of mind of the accused. The court had the factual question presented to it: was the nonconsent of the victim under all the circumstances existing made manifest to the accused? Their finding and resolve were in the affirmative.

■ This is not to say an honest and reasonable mistake of fact instruction should not be given in the proper alleged rape case but here the instructions as a whole adequately instruct on the issues. Should such an instruction be considered it must be remembered the purported mistake of fact cannot stem from the accused's own fault or negligence. *State v. Dizon,* 47 Hawaii 444, 390 P.2d 759 (1964); Wharton's Criminal Law and Procedure (1957), Volume 1, Section 157, page 382; and 22 C.J.S. Criminal Law § 47.

### IV

■ Lastly, the appellant states the specification is defective because it does not affirmatively establish a jurisdictional basis for the trial of the offense. The specification avers the alleged offenses occurred at Konken, Germany, and "said offense occurring outside the territorial limits of the United States." It is said to be jurisdictionally deficient because it does not contain the additional language "and not being cognizable in a U.S. civilian court." Appellant contends the underlying basis for his position is *United States v. Alef,* 3 M.J. 414 (C.M.A.1977) and Department of Army Message No. 1977/2675, 19 October 1977.[3]

When "at Konken, Germany" is read in context with the phrase "said offense occurring outside the territorial limits of the United States" it necessarily implies the government intends to rely on the jurisdictional "overseas exception" of *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969) and *United States v. Newvine,* 23 U.S.C.M.A. 208, 48 C.M.R. 960 (1974). The offense of rape is not extraterritorial. *Alef,* therefore is satisfied by the language of the sworn charge and specification.

Counsel for the appellant have requested that as the record is reviewed we be mindful of the ancient legal maxim "Rape is an accusation easily to be made and hard to be proved and harder to be defended by the party accused though ever so innocent." (Hale, Pleas of the Crown, 635 (1778)). Mindful of our duty and fully conscious of our responsibility and of Hale's admonition, we have examined this record of trial with particular care and studied it in light of the forceful allegations of error raised by counsel for the appellant. We are unable to find any error which requires disturbing either the findings or the sentence.

The findings of guilty and the sentence are affirmed.

---

**3.** The pertinent section of the message reads: "5. Offenses occurring overseas usually fall within the 'overseas exception' to *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), as explained in *U. S. v. Black,* . . . 1 M.J. 340 (C.M.A.1976) and *U. S. v. Lazzaro,* . . . [2 M.J. 76 (C.M.A.1976)]. In such cases the specification format contained in Appendix 6, MCM, may be amended by adding language at the end stating 'said offense occurring outside the territorial limits of the United States and not being cognizable in US civilian court.' Where the offense involves violation of a federal statute with extraterritorial application, the same type subject matter jurisdictional allegations may be used as if the offense had been committed in CONUS.

6. Although USCMA now requires that a specification allege facts demonstrating jurisdiction, where the jurisdictional facts are not related to the guilt or innocence of the accused the trial counsel should argue that these facts are directed to the military judge only and are not within the province of the court members to determine."