**UNITED STATES**

v.

**Airman Basic Lamont E. MAHONE, FR 579–86–3862, Airman First Class Tylon L. Wilson, FR 358–48–6213 and Airman First Class Michael A. Stanton, FR 212–76–8091 United States Air Force.**

**ACM 23406 to 23408.**

U. S. Air Force Court of Military Review

Sentence Adjudged 5 Dec. 1981.

Decided 29 July 1982.

Appellate Counsel for the Accused: Colonel George R. Stevens, Major Willard K. Lockwood, Major Richard A. Morgan and Captain J. Laurens Tullock.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Richard O. Ely, II.

Before HODGSON, POWELL and MILLER, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

The above named accused were tried in common by general court-martial for rape, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920. Specifically, it was alleged that each raped Mrs. C.G.S. and aided and abetted his two co-accused in an act of rape. Contrary to his pleas Mahone was found guilty of rape and aiding and abetting Wilson in an act of rape;[1] Stanton was convicted as charged; and Wilson was found guilty of rape.[2] Mahone was sentenced to a dishonorable discharge, three years' confinement at hard labor, and total forfeitures; Stanton was sentenced to a dishonorable discharge, four years' confinement at hard labor, total forfeitures, and reduction to airman basic; and Wilson was sentenced to a bad conduct discharge, two years' confinement at hard labor, forfeitures of $100.00 per month for six months, and reduction to airman basic.

### I

Mrs. C.G.S. is the wife of a Navy petty officer stationed on Guam. She testified that on 19 September 1981, she went to the Non-Commissioned Officers' Club with two friends, and, sometime after midnight, attended a party on the second floor of a barracks at Andersen Air Force Base, Guam. There she met Stanton, whom she knew as "Mike," who started kissing and holding her. He dragged her into Room 204 which was assigned to Wilson. She tried to push Stanton away while crying and shouting. Mahone and Wilson then carried her to the bed. Stanton held her down while Wilson and Mahone removed her slacks and panties. Wilson put his hand over her mouth and Mahone held her hands. Stanton then told Wilson "to go first" which he did. Subsequently all three accused had sexual intercourse with Mrs. S.

Sergeant Billick lives in Room 203 and went to sleep about 2230 hours the evening of 19 September 1981. He awoke at 0300 and heard a loud female voice "yelling" in a "distressful" way. The noise came from Room 204; he recognized Wilson's voice as being involved in the conversation. The incident did not alarm him so he went back to sleep. He acknowledged that the term "distressful" was suggested to him by the Office of Special Investigations (OSI), but maintained the definition fit.

Airman Agnew is a roommate of Wilson and lives in Room 204. He saw Stanton drag Mrs. S into the room while she was trying to push him away. He heard her say, "she didn't want to make love, she was drunk, and he shouldn't take advantage of her." Agnew's testimony supported almost *in toto* Mrs. S's account of the assault.

While all three accused admitted sexual relations with Mrs. S, they contend it was with her consent and no force was involved. In summary, they assert that although drunk, she came to the room and voluntarily undressed. They gave no explanation as to how her panties became ripped. Mahone admitted, in a written statement, that he held her arm while she was in the room, but at trial contended it was done "in a friendly manner." He assessed his part in the incident as:

"Well, I feel I took advantage of the situation. I think a naked girl, you know, she's not going to resist. Well, here, you know, you don't pass up too many opportunities having sex."

Stanton maintained Mrs. S did not resist and never said "stop" and never screamed

---

1. Mahone was acquitted of aiding and abetting Stanton in an act of rape.

2. Wilson was acquitted of aiding and abetting Mahone and Stanton in acts of rape.

at any time. According to Wilson, Mrs. S consented because:

> "First of all, she was in my room, on my bed half naked. When I started to have sex with her, she did not resist or say anthing as to 'don't'".

The medical examination of Mrs. S conducted early the next morning disclosed no bruises or cuts. The defense also presented evidence that Mrs. S had a reputation for untruthfulness.

## II

The military judge refused to give a defense requested instruction on mistake of fact. The theory supporting the proposed instruction was that each accused could have justifiably assumed the existence of consent if the alleged victim's conduct was of such a nature as to create an honest and reasonable belief she had consented.

It is by no means clear that mistake of fact is a defense to an allegation of rape. The possibility that it might exist was suggested by Judge Brosman's dissent in *United States v. Short*, 4 U.S.C.M.A. 437, 16 C.M.R. 11 (1954), and Judge Kilday's majority opinion in *United States v. Rolder*, 17 U.S.C.M.A. 447, 38 C.M.R. 245 (1968). See also *United States v. Henderson*, 4 U.S.C.M.A. 268, 15 C.M.R. 268 (1954); Cf. *United States v. Jones*, 10 U.S.C.M.A. 122, 27 C.M.R. 196 (1959). The Courts of Military Review have never directly discussed this question. *United States v. Burt*, 45 C.M.R. 557 (A.F.C.M.R.1971), pet. denied, 45 C.M.R. 928 (C.M.A.1971); *United States v. Steele*, 43 C.M.R. 845 (A.C.M.R.1971); Cf. *United States v. Keeve*, 2 M.J. 290 (A.F.C.M.R. 1976) n. 2; Cf. *United States v. Lewis*, 6 M.J. 581 (A.C.M.R.1978). In *United States v. Copeland*, 21 C.M.R. 838 (A.F.B.R.1954), pet. denied, 22 C.M.R. 331 (C.M.A.1956), an Air Force Board of Review reasoned that the victim either consented or she did not. Thus there was no issue raised as to any mistake about it one way or the other. This position has merit as the same factors the accused relies upon to support a mistake of fact instruction establish consent or the lack thereof. *United States v. Henderson, supra.*

In the case *sub judice*, a mistake of fact issue was simply not raised. The gist of the prosecution's case was that the victim was dragged into a room in the barracks, thrown on a bed and held there while the three accused had sexual intercourse with her. She struggled and pleaded with them but to no avail. On the other hand, the defense maintained that the victim initiated the sexual encounter by coming to the room and removing her slacks and panties. Further, she cooperated freely in the sex act and appeared to enjoy it. In our view, the defense's presentation raised only a factual issue of consent which was presented to the members under complete and proper instructions. They were entitled to no more. *United States v. Burt, supra.*

## III

When questioned by OSI agents, Stanton and Wilson denied having sexual intercourse with anyone in the barracks during the evening of 19 September. However, at trial both admitted sexual relations with Mrs. S, and explained their previous denials as a misunderstanding as to the questions they had been asked. The military judge, *sua sponte*, instructed the court:

> Conduct of an accused, including statements made and acts done upon being informed that a crime has been committed, or upon being confronted with a criminal charge, may be considered by the court in the light of other evidence in the case in determining the guilt or innocence of the accused.

> When an accused voluntarily offers an explanation or makes some statement tending to establish his innocence, and such explanation or statement is later shown to be false, the court may consider whether this circumstantial evidence points to a consciousness of guilt. It is reasonable to infer that an innocent person does not ordinarily find it necessary to invent or fabricate a voluntary explanation or statement tending to establish his innocence. Whether or not evidence as to an accused's voluntary ex-

planation or statement points to a consciousness of guilt, and the significance, if any, to be attached to any such evidence, are matters for your determination.

You may also properly consider the circumstances under which the statements were given, such as to whether they were given under oath, and the environment by which they were given.

Stanton and Wilson agree the instruction accurately reflects the law concerning the admissibility of circumstantial evidence pointing to a consciousness of guilt, but argue it should not have been given as it tended to unfairly shift the burden of persuasion to the defense. Mahone contends that since the instruction did not apply to him, e.g., he admitted all along to sexual relations with Mrs. S, it probably led the members to conclude that his co-accuseds were liars and that their testimony, which was consistent with his, should be disbelieved.

■ We do not agree that the challenged instruction was erroneously misleading or in any other way unfair to Stanton and Wilson. In our opinion it correctly states the law. *United States v. Opalka*, 36 C.M.R. 938 (A.F.B.R.1966), *pet. denied*, 36 C.M.R. 541 (C.M.A.1966). The court was aware the burden of proof is always on the government and never shifts to an accused. Article 51(c)(4), Code, 10 U.S.C. § 851(c)(4), *supra*. Further, while the instruction had no application to Mahone, he was not harmed by it. The wording clearly established it did not apply to him, and the court was properly informed that the findings as to each accused were to be arrived at independently. It is presumed the court members followed those instructions. *See United States v. Bowser*, 33 C.M.R. 844 (A.F.B.R. 1963). The military judge did not abuse his discretion in giving the instruction. *United States v. Johnson*, 1 M.J. 137 (C.M.A.1975); *accord, United States v. Speer*, 2 M.J. 1244 (A.F.C.M.R.1976).

## IV

■ While the court was in closed session deliberating, the defense moved to re-open their case contending that the eyewitness to the alleged rapes, Airman Agnew, had recanted his testimony. Agnew was overheard to say, "Those guys didn't rape her." After conducting an inquiry the military judge denied the motion to reopen. He made these findings concerning the incident:

(1) Airman Agnew was present during closing arguments of both sides, and the instructions given by the Military Judge;

(2) Airman Agnew specifically testified in the last session, outside the presence of the court members, that if he were again to be called as a witness, his testimony would not change in any way;

(3) That his off-the-cuff comments were made after listening to closing arguments and instructions, and were also the result of what he perceived to be a lack of interest on part of the prosecutrix, who he apparently believed should have been present if she had, in fact, been raped;

(4) That since his testimony would not have changed in any way, in his out-of-court statement he was no more than reaching a conclusion, the type which is legally in the exclusive province of the court members.

To recant is to withdraw or repudiate formally and publicly. *Pradlik v. State*, 131 Conn. 682, 41 A.2d 906 (1945). After hearing closing arguments by counsel and instructions to the court, Agnew told a spectator that perhaps it was not rape. He did not disavow his testimony that he saw Stanton drag Mrs. S into the room; that Wilson and Mahone threw her on a bed and undressed her while Stanton held her down; or that all three had sexual relations with her over her protests and while she was crying. It is apparent that the arguments and instructions left a question in *his* mind whether the event he witnessed amounted to rape. That decision, however, was not his to make. The members heard *all* the evidence in addition to closing arguments and the judge's instructions. It was their duty to assess the evidence in the light of

the instructions given them. Agnew's conclusion, "[T]hese guys didn't rape her," was irrelevant and of no value to the members. *See State v. McQueen*, 295 N.C. 96, 244 S.E.2d 414 (1978).

■ The decision to allow either side to reopen its case lies within the sound discretion of the military judge. *United States v. Smith*, 15 U.S.C.M.A. 416, 35 C.M.R. 388 (1965); *United States v. Duran*, 411 F.2d 275 (5th Cir. 1969). The judge did not abuse his discretion by refusing to allow the defense to reopen its case.

## V

The three accused urge directly and by implication that Mil.R.Evid. 412 violates their Sixth Amendment confrontation rights. Specifically, they contend they were precluded from questioning the alleged rape victim about her sexual conduct with men other than her husband.

The military rule was adopted from the Federal Rules of Evidence, which incorporated the Privacy Protection for Rape Victim Act of 1978.[3] There is a procedural mechanism to offer evidence of past sexual behavior of a victim; a notice accompanied by an offer of proof is given the military judge and trial counsel by the defense counsel. Mil.R.Evid. 412(b), (c)(1), and (2).

The question of Mrs. S's past sexual conduct was raised by the Government seeking to limit cross-examination in this area. As a result of that motion this exchange occurred:

MJ: (TO TC) And hand it to the court reporter for the record.

DC (CAPT COLIA): Your Honor, if I might point out, I think it might simplify matters. The defense has no intention at all of going into any of the matters that are listed in the Motion. We are not going to—nor any of our witnesses—go into the past sexual conduct of the victim...

3. Public Law 95–540, 92 Stat. 2046 (1978).

4. We do note, however, that Judge Foreman's opinion in *United States v. Hollimon*, 12 M.J.

MJ: Very well. And we don't need a ruling, and if anything should come up at that point, each side should ask for a 39(a); but there's no sense ruling if both sides concur.

MJ: (TO TC) Is that okay with you, Captain Morgan?

TC: Yes, sir.

While Captain Colia was counsel for Wilson, it is obvious he was speaking for the defense collectively when he asserted that Mrs. S's past sexual conduct was not an issue. The record establishes that each accused chose to forego any confrontation with the witness concerning her sexual history. Their lack of notice to the court and opposing counsel as required by Mil.R.Evid. 412 is a clear indication of this. Further, no accused attempted to cross-examine in this area when given the opportunity; this comports with Captain Colia's intention as to trial tactics.

■ An individual may waive a constitutional provision intended for his benefit. *United States v. Troxell*, 30 C.M.R. 586 (C.G.B.R.1960), rev'd on other grounds, 12 U.S.C.M.A. 6, 30 C.M.R. 6 (1960). All that is required is that it be an intentional relinquishment or abandonment of a known right or privilege. *United States v. Martin*, 4 M.J. 852 (A.C.M.R.1978). Based upon the record we find that each accused waived his right to confront Mrs. S as to her past sexual conduct. Thus, we need not decide whether Mil.R.Evid. 412 violates the Sixth Amendment confrontation clause.[4]

## VI

The paramount issue at trial was whether Mrs. S consented to sexual intercourse with each of the three accused. Wilson and Mahone admitted sexual relations with her, but contend no force was involved. Stanton also urges that Mrs. S consented to the encounter, and additionally argues there is a reasonable doubt whether he achieved penetration. Mrs. S testified he did and

791 (A.C.M.R.1982) appears to be dispositive of that issue.

Stanton concedes that this is *possible.* All three accused assert that Mrs. S is such an incredible witness that her testimony on the issue of consent in general, and penetration by Stanton in particular, is unworthy of belief.

 In the record before us the testimony of Mrs. S does not stand alone. Her version of the assault is corroborated by an eyewitness who saw her dragged into the room protesting and held down while the accused had sexual intercourse with her. Her cries of protest were overheard by a next door neighbor. Her ripped panties are indicative of a struggle. In short, these circumstances amount to compelling proof. Weighing all the evidence and giving due consideration to the findings of members who saw and heard the witnesses, we find the evidence establishes each accused's guilt beyond a reasonable doubt. *United States v. Carver,* 12 M.J. 581 (A.F.C.M.R.1981).

### VII

Stanton and Mahone suggest that the sentence each received was inappropriately severe. We disagree. In considering multiple rape convictions for each, the court members responded with a sentence that was logical and tailored to the circumstances of each accused's involvement. Upon consideration of the entire record, we find the sentence as to each accused appropriate.

### VIII

As part of his sentence, Wilson was ordered to forfeit $100.00 per month for six months. In his action, the convening authority incorrectly stated that the approved partial forfeitures applied to Wilson's pay *and allowances.* Allowances are not forfeited unless the approved sentence includes the forfeitures of all pay and allowances. See Manual for Courts-Martial, 1969 (Rev.), paragraph 126*h* (2). Accordingly, that portion of the convening authority's action which purports to apply forfeitures to allowances is set aside.

We have considered the remaining assigned errors set forth by each accused and have resolved them adversely to that accused.

Accordingly, the findings of guilty and the sentence as to each accused are

AFFIRMED.

MILLER, Judge, concurs.

POWELL, Senior Judge, absent.